## Hood *v.* Hunt.

5-2197                               339 S. W. 2d 97

Opinion delivered October 17, 1960.

*Spitzberg, Bonner, Mitchell & Hays,* for appellant.

*Rose, Meek, House, Barron & Nash,* for appellee.

Jim Johnson, Associate Justice. This case involves an offer and disputed acceptance for the sale of a house and lot. The appellees are the joint owners in an estate by the entirety of a one story, two bedroom house located at 1716 South Buchanan Street in Little Rock. On August 13, 1959, appellees gave an exclusive listing for the sale of this property at $14,500 to Jack Collier East Company, Inc., a real estate firm. The listing was signed by Mr. Hunt as the owner and by Mrs. Hunt, as wife, who agreed to execute a warranty deed conveying her dower and homestead in the property. On August 22, 1959, appellants were shown the property by a sales-

man employed by the real estate firm and while still on the premises the appellants executed an offer to purchase the property at $14,500 upon the customary printed real estate form furnished them by the salesman and earnest money in the amount of $202.50 in the form of a check was tendered with the offer. The offer was then presented to the appellee, Mr. Hunt, and he accepted the offer by signing his name. Mrs. Hunt was not at home while this transaction was taking place. Before leaving, Dr. Hood and Mr. Hunt went into the back yard where Mr. Hunt called attention to the fact that a part of the wire fence had been removed and that he planned to replace it with a white picket fence. Mr. Hunt offered to build the picket fence but Dr. Hood said he preferred the wire fence to be replaced since he had a dog. Mr. Hunt agreed to replace the wire fence and in accordance with this agreement did replace it.

When Mrs. Hunt returned home later that afternoon she was informed of the sale. She inquired about the necessity of her signing the acceptance and was told by the salesman for the real estate firm that this was not necessary since she had already signed the listing in which she obligated herself to execute a deed should a purchaser be found in accordance with the listing.

After the Hoods left (August 22nd) other prospects came by to see the house but Mrs. Hunt informed them that the house had been sold and did not show it to them.

The Hunts, thinking that their house was sold, purchased another residence and signed the papers therefor either on Wednesday or Thursday following the Hoods' offer on Saturday. On the following Friday morning Mrs. Hunt phoned Mrs. Hood that mail had come for the Hoods. It turned out that the Hoods had bank checks printed showing their new address to be 1716 South Buchanan and this was the mail which had arrived. In the course of that conversation Mrs. Hunt informed Mrs. Hood that they could have possession on September 1st, which was agreeable with Mrs. Hood. In the meantime,

Mrs. Hunt had communicated her acceptance of the offer to the representative of Jack Collier East Company, Inc., who were the agents for the Hoods in making the offer. On Friday afternoon when Mrs. Hood came by to pick up the mail, she informed Mrs. Hunt that Dr. Hood had been transferred to another city where they would be furnished living quarters. The Hoods refused to go through with the transaction. Appellees filed a complaint in the Pulaski Chancery Court to specifically enforce a sale of the property. Abstract of title and a proper deed were tendered by appellees. The Chancellor granted specific performance and this appeal followed.

The only real question presented here is whether the contract lacked mutuality of remedy.

Appellants very persuasively argue that since Mrs. Hunt did not sign the acceptance and because this was an estate by the entirety, Mrs. Hunt was not bound, and since she was not bound, neither were the Hoods. However, the record reveals that it is undisputed that Mr. Hunt did actually sign the acceptance of the Hood offer thereby making him legally obligated to give a good conveyance; consequently there was mutuality as between Mr. Hunt and the Hoods. It is further undisputed that he tendered such a conveyance in which his wife joined as grantor. Based upon these facts we are bound by our rule that it was sufficient that Hunt was able to make a good conveyance any time before the decree for specific performance was rendered. See: *Drennan* v. *Boyer,* 5 Ark. 497; *Chrisman* v. *Partee and Wife,* 38 Ark. 31; *Elliott* v. *Hogue,* 113 Ark. 599, 168 S. W. 1097. Also see: 49 Am. Jur. Specific Performance, § 37; 81 C. J. S. Specific Performance, § 11, p. 429; 5 Corbin Contract, §§ 1185 and 1195.

The *Chrisman* case, *supra,* is directly in point and the doctrine it enunciates has been followed and approved by this Court repeatedly, the most recent case being *Ray* v. *Robben,* 225 Ark. 824. 285 S. W. 2d 907.

The record further reveals that not only did **Mrs. Hunt** join in the execution of a deed with her husband, which was tendered to the appellants, but she also joined in the suit as a plaintiff and thus ratified her husband's acceptance. The above cited authorities hold that her joining in the deed was enough to supply mutuality but the fact that she submitted herself to the jurisdiction of the court likewise supplied mutuality. See: *Vance* v. *Newman,* 72 Ark. 359, 80 S. W. 574.

The *Chrisman* case, *supra,* holds that the incapacity to perform a contract must be judged not at the time the contract is made but at the time its performance is sought. Consequently, when one comes into court seeking specific performance and submits himself to the jurisdiction of the Court, "the institution of the suit supplies the mutuality which was wanting in the first instance."

Affirmed.

GEORGE ROSE SMITH, J., not participating.