Greta E. FOSHEE *v.* James S. MURPHY and
Grethe S. MURPHY et al

CA 79-178 593 S.W. 2d 486

Opinion delivered January 16, 1980
Released for publication February 6, 1980

 

*Dan McCraw,* for appellant.

*Wootton, Land & Matthews,* for appellees.

MARIAN F. PENIX, Judge. This case was appealed to the Arkansas Supreme Court and by that court assigned to the Arkansas Court of Appeals pursuant to Rule 29(3).

The appellees, Murphys, brought an action for specific performance of a contract to purchase certain real property. The Court decreed specific performance and held the appellant Ms. Foshee was bound by the terms contained in the mortgage and note prepared by her attorney, delivered to Murphys for execution and tender at closing. Ms. Foshee appeals.

On March 22, 1978, the Murphys made an offer to Foshees to buy real estate for $100,000 with $20,000 in cash and $80,000 payable over 25 years at seven and one-half percent. The Foshees rejected the offer and extended a counter-offer of $110,000 with $25,000 in cash and $85,000 payable over 25 years at eight and one-half percent interest and incorporated by reference all other terms of the Murphys' original offer. The Murphys accepted the counter-offer. The Foshees' listing agent prepared a "clean-up" offer and acceptance which the Murphys signed. On March 23, the Foshees refused to sign because of dissatisfaction with the size of the monthly payment which a 25 year amortization would generate. The Murphys agreed to amortize the note over a 20 year period rather than a 25 year period and initialed such provision which was inserted into the "clean-up" offer and acceptance document. Ms. Foshee readily signed. Mr. Foshee refused to sign, saying the monthly payments were still too small. On March 27, Mr. Foshee related to his son, Wayne, they had sold the property. On April 16, Mr. Foshee died. Ms. Foshee delivered the abstract of the property to her agent for recertification and her attorney prepared a note, mortgage and deed and set the closing date for May 18, 1978. Ms. Foshee refused to consummate the transaction because she discovered certain lots

contained in the description which she contends she did not intend to sell. On June 7, the Murphys filed suit asking for specific performance and for correction of a mutual mistake within the contract. In her July 6 answer, Ms. Foshee alleged she was not bound to the contract because of the death of Mr. Foshee.

## I

Ms. Foshee contends there is error in the court's finding a contract existed between the parties. The property was held as an Estate by the Entirety by the Foshees. Ms. Foshee contends the March 23rd Offer and Acceptance with the amendment changing the time of amortization which was initialed by the Murphys constituted a new offer which effectively set aside the counter-offer of March 22. She contends this is a substantial change in the terms of the March 22nd counter-offer, especially to elderly persons who must depend upon the monthly payment for living expenses. She also contends the initialed offer and acceptance required it be accepted by the Foshees within one day. Mr. Foshee did not accept the offer within the required one day. She contends only one party owning the estate by the entirety signed the offer and acceptance and cites the general rule found in 91 C.J.S., Vendor and Purchaser, § 29(b)(2) pp. 879-880.

> Where a conveyance of certain property can be made only by the concurrence of two or more persons an offer to purchase must be accepted by each of them.

Ms. Foshee contends the offer lapsed March 25, 1978 and could not have been enforced against Mr. Foshee had he lived.

The Murphys contend Mr. Foshee would have been bound to his contract had he not died. They contend the Foshees' counter-offer was accepted by the Murphys and Mr. Foshee was obliged to sign the "clean-up" document which was drawn up to accommodate the Foshees. The Murphys also contend an owner of less than complete or good title to land may enforce his contract for sale if he is able to give good title on performance date. The case on which

the Murphys rely is *Hood* v. *Hunt*, 232 Ark. 591, 339 S.W. 2d 97 (1960). In that case, Mr. Hunt, the seller, signed the offer and acceptance, but Ms. Hunt did not. Later the Hunts both signed the deed which was tendered to the buyers, but refused to go through with the transaction. The court, in granting specific performance, held:

> Based upon these facts, we are bound by our rule it was sufficient that Hunt was able to make a good conveyance any time before the decree for specific performance was rendered.

Even if Mr. Foshee could not have been bound by the contract, Ms. Foshee can be bound. She signed the contract and was the sole owner of the property at his death. She was able to make a good conveyance before the court decreed specific performance. Either spouse owning property by the entirety may transfer his or her interest, although it cannot thus affect the interest of the other. At the closing date, Ms. Foshee was obliged to convey all of her interest as she had agreed. This would have been the case whether Mr. Foshee was then living or not. Since Mr. Foshee died April 18, 1978, Ms. Foshee was the sole owner as survivor of an estate by the entirety and had complete ownership to convey.

We find a contract did exist between the parties.

## II

Ms. Foshee contends the court erred in refusing to rescind the contract for a unilateral mistake.

The initial offer and acceptance, the counter-offer, and the "clean-up" offer all listed unimproved lots which Ms. Foshee now claims she and her husband were unaware of being included in the contract to sell. A unilateral mistake is a subjective matter and the rule in Arkansas is a court will not reform or rescind a contract involving a unilateral mistake except where fraud is involved. *Gall* v. *Union National Bank of Little Rock*, 203 Ark. 1000, 159 S.W. 2d 757 (1942). The Murphys were shown the unimproved lots by the Foshees' listing agent and it was represented to them that

they were included with the improved lots being offered for sale. The lots were listed in all of the documents which passed between the Murphys and the Foshees. Ms. Foshee's own attorney caused them to be listed in the mortgage and deed which he prepared. Ms. Foshee admits not having read the documents she signed, although she admits having the opportunity to do so. Ms. Foshee would have us apply the exception to the Unilateral Mistake Rule. Such exception being in the instance when an agreement is oppressive or unconscionable. We do not find elements of unconscionableness in the particular circumstances of this case.

We find no error in the court's refusing to rescind the contract for a unilateral mistake.

## III

Ms. Foshee alleges the court erred in expanding the contract to include the terms of the proposed mortgage and note.

Ms. Foshee's attorney prepared a mortgage and promissory note and caused them to be mailed to the Murphys for their execution. The Murphys executed them and they were tendered at the May 18 closing. Mr. Murphy had some questions concerning these documents and Ms. Foshee's attorney called him to discuss the matter. After the telephone call, Mr. Murphy was satisfied and proceeded to execute the mortgage and note. Ms. Foshee's son insisted the closing be held immediately.

Quite obviously the Chancery Court had the necessity and the power to require Ms. Foshee to accept the terms of the note and mortgage which were prepared by her own attorney. Without this provision, there would not be a complete settlement of the transaction. This would invite circuity of actions and multiplicity of litigation which equity abhors. *Fidelity Deposit Co. of Maryland* v. *Cowan*, 184 Ark. 75, 41 S.W. 2d 748 (1931).

Affirmed.

NEWBERN, J., concurs.

DAVID NEWBERN, Judge, concurring. I agree Arkansas law permits a tenant by the entireties to convey her share of the estate. *Franks* v. *Wood,* 217 Ark. 10, 228 S.W. 2d 480 (1950). That does not mean that in every case in which a tenant by the entireties signs an agreement to sell the agreement is subject to specific performance. It must be clear, as in the case before us, that it was her intent to agree to convey the property regardless whether her spouse agreed or not. The acts of Greta Foshee subsequent to the signing of the contract indicate that was her intent. Had it, on the other hand, been clear that she intended to sell only in the event her husband joined in the contract, specific performance would not have been appropriate. Although I find no Arkansas case squarely addressing that point, see Annot., 154 A.L.R. 767, 777-778 (1945). See also, *Roulston* v. *Hall*, 66 Ark. 305, 50 S.W. 690 (1899), where the court stated the "doctrine of inurement" as follows:

> Neither tenant by entirety can convey his or her interest so as to affect the right of survivorship in the other. The alienation by the husband of a moiety will not defeat the wife's title to that moiety if she survive him; but, if he survives the conveyance becomes as effective to pass the whole estate as it would had he been sole seized at the time of the conveyance.

That doctrine does not strictly apply here, as there has been no "conveyance," at least in the sense of execution of a deed, by Greta Foshee.

For that reason I would also distinguish *Hood* v. *Hunt*, 232 Ark. 591, 339 S.W. 2d 97 (1960), which is cited by the majority. Unlike this case, there both husband and wife had signed a deed, and in applying the doctrine of mutuality, it was held that both of them had obligated themselves to convey, regardless of failure of one of them to be bound on the contract to sell. In the case before us, Greta Foshee's deceased husband had signed no deed and had not signed the contract.

I also find part three of the majority opinion objectionable, as it implies that a party must execute a document or be

bound to it without having signed it just because it was prepared by her attorney. I know of no authority for such a proposition.

My reason for agreeing with the result here is that Greta Foshee purported to convey her interest in the property in question, and that would include any right to which she might succeed as a survivor of her husband. Her intent appears from her conduct subsequent to the date of the contract. I believe the "doctrine of inurement" thus applies, but I want it clarified I could not acquiesce in specific performance had it appeared she intended to convey only if her husband signed the contract too.