Margaret McILLWAIN, et al. *v.* The BANK OF HARRISBURG, et al.

CA 85-249 713 S.W.2d 469

Court of Appeals of Arkansas
Division II
Opinion delivered July 9, 1986
[Supplemental Opinion on Petition for Rehearing
September 3, 1986.]

214

*Martin R. Kriger*, and *Haley, Polk & Heister, P.A.*, by: *Edward J. Bisno*, for appellant.

*Rice L. VanAusdall*, for appellee, Bank of Harrisburg.

*Collier & Jennings*, by: *Larry R. Jennings*, for appellees Lohnes T. Tiner and Margaret Tiner.

*Bill W. Bristow, P.A.*, and *Tommy Womack*, for appellees L. Dana Collins, Barbara Collins, and the Collier Family Trust.

LAWSON CLONINGER, Judge. This is an appeal from a decree of foreclosure. In the decree, the chancellor found that appellant, Margaret McIllwain, and her now deceased husband, L.E. McIllwain, failed to mitigate damages and therefore were not entitled to be reimbursed for the losses they suffered due to the foreclosure. Although there are several other points raised on appeal and discussed below, we reverse the finding of the chancellor that appellants had the duty to mitigate damages.

Because this is a rather complicated fact situation, it is necessary to set out the facts in greater detail than we normally would. Also, for the sake of convenience, we will not discuss the issues in the order presented in the briefs. Some of appellants' arguments are combined and discussed as one issue.

L.E. McIllwain and Margaret McIllwain, his wife, owned approximately 520 acres of farmland located in Poinsett County, Arkansas. On August 14, 1979, Mr. and Mrs. McIllwain borrowed $294,000.00 from appellee, The Bank of Harrisburg, using the farmland as collateral. The McIllwains gave the Bank a mortgage on the land and executed a promissory note which was due on December 31, 1979, with ten percent interest.

Entered into evidence was an agreement to extend the loan, dated August 10, 1980. This document extended the date the loan was due and payable from December 31, 1979, to August 10, 1980. The agreement shows the loan balance to be $294,868.04 and provides for an interest rate of ten percent. Appellants McIllwains argues at trial that L.E. McIllwain had never signed an extension agreement and contended that it was a forgery. However, that issue is not before us on appeal.

On February 5, 1980, Mr. and Mrs. McIllwain entered into a contract to sell the land to appellees, Mr. and Mrs. Lohnes T. Tiner. In the contract the Tiners agreed to assume the above mortgage and another mortgage on the property for $55,000.00 held by Prudential Insurance Company of America. The Tiners also agreed to pay the McIllwains $50,000.00 down, and $50,000.00 a year for the next twenty-four years. Under the contract the Tiners were to have possession of the land, but the McIllwains would retain the deed until the contract was paid in full. The contract also stated that in case of default, the McIllwains could either take possession of the property and keep all sums paid as liquidated damages, or accelerate the debt and demand that the balance of the contract be paid. The contract did not contain any provisions for interest and it is not known how much of each $50,000.00 payment is attributable to interest.

On the same day, the Tiners sold one-half of their interest in the contract to appellees, Mr. and Mrs. L. Dana Collins. In return, Mr. and Mrs. Collins agreed to assume one-half of the liabilities and obligations associated with the contract between the McIllwains and Tiners. Under this contract, the Collinses would be entitled to possession of one-half of the land.

Also on February 5, 1980, the Tiners, Collinses and McIllwains entered another separate agreement which gave the Collinses and Tiners the right to mortgage the property for up to $349,000.00. The purpose of the agreement was to enable the Collinses and Tiners to secure a loan to pay off the existing mortgages and use the land as collateral for the new loan.

L. Dana Collins gave the Bank a promissory note in the principal amount of $249,000.00. The note, dated February 5, 1980, was due August 5, 1980, with eighteen percent interest. On October 14, 1981, L. Dana Collins gave the Bank another

promissory note in the principal amount of $294,868.00. This note was due April 15, 1982, with nineteen percent interest. The purpose of this second note was to extend the note dated February 5, 1980.

On March 16, 1983, the Collinses and Tiners entered into a contract with P.M. Farms, Inc., an Arkansas corporation wholly owned by Phillip Moore. This contract assigned to P.M. Farms all of their interest in the property. P.M. Farms agreed to assume the note and mortgage held by the Bank, the note and mortgage held by Prudential Life and all past and future indebtedness of the McIllwains, Collinses and Tiners associated with the land. Phillip Moore also executed a personal indemnity agreement covering all of the obligations of P.M. Farms under its contract with the Collinses and Tiners.

On January 31, 1983, Mr. and Mrs. Collins divorced and any interest they had in the land and contract was transferred to the trustee of the Collins Family Trust.

On December 20, 1983, the Bank filed a petition for foreclosure, listing as defendants the McIllwains, Tiners, Collinses and the Collins Family Trust, Phillip Moore, and P.M. Farms, Inc.

On June 7, 1984, Joseph Scott offered to buy the property from the McIllwains for $832,000.00, to be paid on or before December 31, 1984. The McIllwains did not accept the offer. Approximately six weeks before the trial, Scott again offered to purchase the property for $624,000.00, and again the McIllwains did not accept the offer.

Prior to the filing of the suit, Moore talked with the McIllwains about purchasing an annuity for them to pay off the contract debt. The Tiners and Collinses were included in the discussion. The McIllwains declined the offer. Moore then proposed that the property be mortgaged for $630,000.00, using the money to pay off the Bank and Prudential, and giving the balance to the McIllwains. The McIllwains refused.

In their answer to the petition for foreclosure, the McIllwains denied that they were liable for the debt and requested specific performance of the contract between themselves and the Tiners. In the alternative, they pled that a novation

occurred when L. Dana Collins gave his promissory note to the Bank.

After the trial, the chancellor issued a decree of foreclosure, which contained the following findings:

1. Mr. and Mrs. McIllwain had defaulted on the payment of their note and the sum of $350,033.93, reflecting principal and accrued interest, was due. The chancellor also awarded the Bank $5,000.00 in attorney's fees.

2. The McIllwains' request for specific performance was denied because it was impossible to perform, and a novation had not occurred because there was no evidence that the Bank intended to substitute the McIllwains' note with the note of L. Dana Collins.

3. The Tiners and Collinses had proven that the McIllwains failed to mitigate damages when they refused the offers of Scott and Moore; therefore, the Tiners and Collinses were discharged from their obligations under the land sale contract.

4. Because there had been no novation and because the Collinses and Tiners were discharged, Margaret McIllwain and L.E. McIllwain's estate were liable for the $350,033.93 debt to the Bank. (L.E. McIllwain died shortly before the trial.)

5. The Tiners and Collinses were liable to the Bank for $65,234.51. The chancellor found that the Tiners and Collinses were jointly obligated on the note for $249,000.00, dated February 5, 1980, which L. Dana Collins had given to the Bank, and this amount reflected the accrued interest.

6. Phillip Moore and P.M. Farms had agreed to be responsible for the obligations of the Tiners and Collinses; therefore, they should have judgment against Phillip Moore in the amount for which they are liable to the Bank, $65,234.51.

7. If the judgment had not been paid within ten days, the land was to be sold at public auction subject to the lien of Prudential.

On appeal, appellants, Margaret McIllwain and the Estate of L.E. McIllwain, argue nine points for reversal. On cross-appeal, the Collinses argue one point.

## I

## IT WAS PROPER FOR THE CHANCELLOR NOT TO ALLOW TESTIMONY REGARDING THE INTEREST RATE IN THE LAND SALE CONTRACT BETWEEN THE TINERS AND THE McILLWAINS.

As noted above, the land sale contract of February 5, 1980, between the Tiners and the McIllwains called for annual payments of $50,000.00 for twenty-four years. The contract does not specify how much of each payment is to be attributed to interest. Appellants contends that an interest rate was contemplated by the parties and that it was error for the chancellor not to allow testimony as to what that interest rate was. They argue that since the issue was first raised by appellee Barbara Collins in her pleadings, and subsequently raised again in the testimony of appellee Lohnes Tiner, it was error for the trial court to exclude the proffered testimony that appellee Tiner, an attorney, had advised appellants that a six percent interest rate would be implied.

 For the trial court to have admitted the testimony on the interest rate would have been a violation of the parol evidence rule. It is well recognized that parol evidence cannot be introduced to change or alter a contract in writing. *Blount* v. *McCurdy*, 267 Ark. 989, 593 S.W.2d 468 (Ark. App. 1980). Oral testimony, however, is competent for the purpose of resolving confusion when ambiguity and uncertainty exist in the contract, and the testimony may relate to the circumstances attendant to the execution of the written contract, the relationship of the parties, and evidence of the conversations. *Id.* The contract in this case speaks for itself; the proffered testimony would have had the effect of modifying and contradicting its terms. The trial court therefore properly refused to admit the testimony.

## II

## THE TRIAL COURT DID NOT ERR WHEN IT FOUND THAT A NOVATION HAD NOT OCCURRED.

Appellants argue that the trial court erred in holding that they had defaulted in the payment of their note to the Bank for the reason that a novation occurred when appellee Bank accepted appellee Collins's note and payment resulted. According to

appellants, appellee Bank, without notice to the McIllwains, accepted two different notes from appellee Collins, each with progressively higher interest rates of eighteen and nineteen percent. The original McIllwain note carried an interest rate of ten percent. When payments were made by appellees Tiners or Collins on the Collins's note, those payments were credited to Collins's note and not McIllwains' note.

As appellee Bank points out, however, at the time Collins made the new note, he and Tiner were the equitable owners of the realty. Moreover, the original McIllwain note was at all times held by the Bank and was neither shown paid nor returned to the McIllwains. L.E. McIllwain stated in his deposition that he normally secured the return of paid notes, recognizing that this was important in evidencing that the debt had been paid. Further, L.E. McIllwain acknowledged that he had intended to get a new loan to pay off the bank debt.

Novation is the substitution, by mutual agreement, of a new debt or obligation for an existing one, and, like any other contract, a novation must be supported by mutual obligation. *Sterling v. Sterling*, 2 Ark. App. 168, 621 S.W.2d 1 (1981). The burden of establishing a novation is upon the party claiming it. *Simmons National Bank v. Dalton*, 232 Ark. 359, 337 S.W.2d 667 (1960). In order for there to be a novation it is necessary to show an intent on the part of the creditor to release an old debtor and substitute a new debtor. *Ward v. Worthen Bank & Trust Co.*, 284 Ark. 355, 681 S.W.2d 365 (1984). There must be a clear and definite intention on the part of all concerned that such is the purpose of the agreement. *Alston v. Bitely*, 252 Ark. 79, 447 S.W.2d 446 (1972). It is not essential that the assent to and acceptance of the terms of the novation be shown by express words to that effect; rather, it may be implied from the facts and circumstances attending the transaction and in the conduct of the parties thereafter. *Ward v. Worthen Bank & Trust Co., supra; Elkins v. Henry Vogt Machine Co.*, 125 Ark. 6, 187 S.W. 663 (1916).

In the present case, nothing in the words or conduct of the parties indicates that a novation was intended. The evidence discussed suggests that neither appellants nor appellee Bank considered McIllwains' note paid.

## III

## IT WAS NOT ERROR FOR THE CHANCELLOR TO FIND THAT SPECIFIC PERFORMANCE WAS IMPOSSIBLE; HOWEVER, IT WAS ERROR FOR THE CHANCELLOR TO DISCHARGE THE TINERS AND COLLINSES FROM THEIR OBLIGATIONS SINCE THE APPELLANTS, McILLWAINS, DID NOT HAVE A DUTY TO MITIGATE DAMAGES.

■ Appellants argue that because specific performance of land sale contracts can be granted to vendors, it was error for the chancellor to deny them the remedy of specific performance. While it is true that vendors can be granted the remedy of specific performance for breach of land sale contracts, specific performance is an equitable remedy and courts of equity have some latitude of discretion in granting or withholding that relief, depending on the inequities in a particular case. *Langston* v. *Langston*, 3 Ark. App. 286, 625 S.W.2d 554 (1981).

■ In order for a court to grant specific performance there must be mutuality of remedy. In other words, the McIllwains had to be able to tender good title to the land in exchange for the purchase price. Mutuality of remedy is judged, not at the time the contract is entered into, but at the time its performance is sought. *Hood* v. *Hunt*, 232 Ark. 591, 339 S.W.2d 97 (1960).

■ In the case of *Dennis* v. *Blinz*, 230 Ark. 1010, 328 S.W.2d 85 (1959), the Arkansas Supreme Court said that "specific performance will not lie where performance is impossible." In that case, the appellee made a signed offer to purchase property conditioned upon his being able to obtain financing. Appellee's wife refused to sign the loan agreement documents on the basis that she was not a party to the offer. In denying appellants specific performance, the court noted that it was impossible to force the lending institution to lend appellee the purchase money. In the present case, because of the foreclosure action, it would be impossible for the contract to be specifically performed since the McIllwains could not convey clear title of the property to the Collinses and Tiners, and the Collinses and Tiners were unable to perform.

After finding that specific performance was impossible, the

chancellor stated in his letter opinion that the McIllwains would have been entitled to damages for breach of contract if they had not failed to mitigate damages. The chancellor found further that, since the McIllwains refused the offers of Scott and Moore, they failed in their duty to mitigate damages and the Tiners and Collinses were discharged from their obligations under the contract. Although we agree that it was proper for the chancellor to deny the McIllwains the remedy of specific performance, we find that it was error for him to hold that the McIllwains had a duty to mitigate damages.

When a party sues for specific performance he is not required to elect his remedy until a judicial decision has been made on the specific performance issue. *Boensch* v. *Cornett*, 267 Ark. 671, 590 S.W.2d 55 (Ark. App. 1979). We agree with appellants' argument that by being forced to mitigate damages, they have in fact been forced to elect a remedy. This is not to say that a party to a contract can always avoid the duty to mitigate damages by merely pleading specific performance. But in land sale contracts where specific performance is generally granted as a matter of course, *Loveless* v. *Diehl*, 236 Ark. 129, 364 S.W.2d 317 (1963), and the party so pleading has reasonable grounds to believe he is entitled to specific performance, the duty to mitigate damages should be postponed until a judicial determination on that issue. Since we have found that appellants did not have a duty to mitigate damages, the issues appellants raise relating to Joe Scott's offers, Phillip Moore's offer, and the denial by the chancellor of a new trial based on new evidence are moot.

## IV

## DAMAGES.

Appellants, not having a duty to mitigate damages, are entitled to the damages they suffered as a result of the breach by the Tiners and Collinses. The Tiners and Collinses breached the contract by not paying the Bank as they agreed to do when they assumed the indebtedness.

Under the contract the McIllwains were entitled to have the note held by the Bank paid, the mortgage held by Prudential paid and the receipt of $50,000.00 a year for twenty-four years. However, since the land has been sold according to the

decree of foreclosure, the appellees' duties to pay the Bank and Prudential are discharged. In the discussion of damages in his letter opinion, the chancellor found that appellants, McIllwains, would have been entitled to damages equal to the future stream of payments reduced to their present value. The chancellor determined that a figure of twelve percent should be used to discount the future payments to present value, and determined the amount of damages to be $389,215.80. Although appellants argue that this was error, it is well settled that future damages should be reduced to their present value. *St. Louis, Iron Mountain and Southern Railway Co.* v. *McMichael*, 115 Ark. 101, 171 S.W. 115 (1914). Under the facts presented to the court, we cannot say that the chancellor's decision to discount damages to their present value using twelve percent was clearly erroneous. We hold, therefore, that Margaret McIllwain and the Estate of L.E. McIllwain are entitled to damages in the amount of $389,215.80.

The chancellor found that Phillip Moore was liable to the Bank for the accrued interest on the Collins note dated February 5, 1980, since he had contractually assumed the indebtedness. However, Moore is not liable for the damages to appellants McIllwains. There is no evidence in the record that the McIllwains had agreed to accept Moore as a substitute debtor. *See Ward* v. *Worthen Bank & Trust, supra.* The fact that the McIllwains entered into an agreement on February 5, 1980, with the Tiners and Collinses to mortgage the property will support our finding that the McIllwains intended for the Collinses and Tiners to be liable for the debt. Therefore, appellants are entitled to judgment against appellees, L. Dana Collins, Barbara Collins, the Collins Family Trust, and Mr. and Mrs. Lohnes Tiner in the amount of $389,215.80.

V

THE COLLINSES' CROSS APPEAL.

When this action commenced, the land was placed into receivership. The land was rented by the receiver, and the rent money, approximately $50,000.00, was placed into escrow. In his decree, the chancellor ordered that this money should be applied to the McIllwains' portion of the debt. It is the Collinses' contention that this was error. However, there is no authority cited in their brief. An argument, unsupported by convincing

authority, will not be considered on appeal unless it is apparent without further research that it is well taken. *Dixon* v. *State*, 260 Ark. 857, 545 S.W.2d 606 (1977).

For the reasons stated above, this case is reversed in part and remanded with directions to the trial court to enter an order not inconsistent with this opinion.

Affirmed in part; reversed in part and remanded.

CRACRAFT, C.J., and GLAZE, J., agree.

Supplemental Opinion on Petition for Rehearing
September 3, 1986

713 S.W.2d 469

CONTRACTS — NO ASSUMPTION OF OBLIGATIONS OF CONTRACT — NO LIABILITY FOR PORTION OF JUDGMENT. — Where a family trust did not assume any of the obligations of the contract in question, it is not liable for any portion of the judgment.

LAWSON CLONINGER, Judge. In our original opinion in this case, dated July 9, 1986, we held that since appellants, Margaret McIllwain and the Estate of L.E. McIllwain, had pled for specific performance of their contract with appellees Lohnes Tiner and Margaret Tiner, any duty appellants may have had to mitigate damages would not arise until there had been a judicial determination of the request for specific performance. Because the duty had not yet arisen, we reversed the chancellor's decision to discharge the Tiners and Collinses from their obligations and found that they were indeed liable for damages in the sum of $389,215.80, which resulted from their breach of the land sale contract.

In a petition for rehearing, appellees L. Dana Collins, Barbara Collins, and the Collins Family Trust request that the trust not be held liable for any of the judgment since it was merely the title holder and had not assumed any responsibility to perform the contract. They also point out that when they purchased their interest in the contract from appellees Lohnes Tiner and Margaret Tiner, they only agreed to assume one-half of the obligations and they request that they be held liable for only one-half of the judgment. In their response, appellants agree.

■ We think it proper to supplement our original opinion by modifying the liabilities of the parties. Since the Collins Family Trust did not assume any of the obligations of the contract, it is not liable for any portion of the judgment. The Tiners and Collinses are jointly and severally liable for one-half of the amount of the judgment with the Tiners remaining liable for the full amount.

The petition for rehearing is otherwise denied.