2015 Ark. App. 229

TRAVELERS CASUALTY & SURETY
COMPANY OF AMERICA, and Boyd
Corley Construction, LLC d/b/a Tycor
Construction, LLC a/k/a Tycor Indus-
tries, LLC, Appellants,

v.

CUMMINS MID–SOUTH,
LLC, Appellee.

No. CV–14–592

Court of Appeals of Arkansas,
DIVISION I.

Opinion Delivered April 15, 2015

Rehearing Denied May 20, 2015

Newland & Associates, PLLC, by: Joel Hoover and Breanna Trombley, Little Rock, for appellants.

Raymond Harrill, Little Rock and Robert Tschiemer, Mayflower, for appellee.

BART F. VIRDEN, Judge

Travelers Casualty and Surety Company of America (Travelers) and Tycor Industries LLC (Tycor) appeal the circuit court's order for Tycor to pay Cummins Mid–South LLC (Cummins) $59,115.14 plus costs, interest, and attorney's fees on the grounds that (1) the language of the lien release was ambiguous, (2) Cummins did not waive its right to recover on the bond, and (3) Tycor was unjustly enriched. This appeal follows.

On appeal, Tycor asserts that the terms of the release were unambiguous, and that Cummins waived its right to payment under the bond by signing the release. Additionally, Tycor asserts that Cummins is not entitled to recover under the doctrine of unjust enrichment because the existence of a contract bars such recovery. We agree, and we reverse the circuit court's order.

## I. Facts

Tycor, a general contractor, bonded by Travelers, subcontracted with ARC Electrical (ARC) for installation and electrical work on the Armed Forces Reserve Center project (project). ARC purchased a generator from Cummins. ARC began to have problems performing, and Tycor fired ARC before the job was completed. On August 3, 2011, John Virden[1] of Tycor contacted Nick Grandison, a project manager at Cummins, to ascertain if any money was owed for supplies relating to the project. Initially, Grandison told Virden that Cummins was paid in full. However, on September 20, 2011, Cummins contacted Tycor and explained that it had made a mistake and their records showed that Tycor actually owed $59,115.14 for the generator. It was undisputed that Tycor had assumed the liabilities of ARC regarding this job. Tycor took no action. In November 2011, Tycor received written notice that a $2,748.16 bill from a September 2, 2011 service call on the generator had gone into collection. The invoice showed the date of the service call, the parts and labor charges, plus various charges related to the repair of the part. On December 1, 2011, Tycor paid the bill with a check dated December 1, 2011, and wrote "Paid in Full–RE: Armed Forces Res. Ctr." Tycor prepared the release, which was dated December 13, 2011. It was entitled "SUBCONTRACTOR/MATERIALMAN UNCONDITIONAL WAIVER AND RELEASE UPON FINAL PAYMENT," and was signed by Cummins's chief financial officer, Mark Whitehead. It contained the statement "covers the full and final payment of the contract amount for labor, services and equipment, or material furnished on the job of Armed Forces Reserve Center." Whitehead testified he handled unpaid accounts as a part of his

---

1. John Virden is not related to Judge Bart F. Virden.

job, regularly signing lien waivers and that he signed the release drafted by Tycor. He explained that he did not contact Tycor to discuss the release. Whitehead testified that he knew what a final lien waiver was, and he knew that if he signed it, Cummins was not going to get paid any more on that project. He testified that he did not check to see if any money was owed by Tycor on the job.

Three more times in January 2012, the generator required repair, which Cummins provided. The total bill for the three service calls was $6,794.64, which Tycor paid. However, for these repairs, Cummins prepared its own lien release, specifically noting that the generator itself had not been paid for. On March 28, 2012, Cummins submitted a notice of subcontractors claim against the contractor's bond for the amount of the generator, transfer switch, and start-up materials. Travelers denied the claim based on the execution of the lien release. On July 2, 2012, Cummins filed a complaint against Tycor and Travelers, asking for payment for the generator, interest, and attorney's fees. Tycor filed a motion to dismiss with its answer, which the circuit court denied.

## II. *The Circuit Court's Order*

On March 7, 2014, the circuit court entered an order finding that Cummins did not waive its bond claim on the grounds that the language of the first release was ambiguous and did not indicate it was payment for anything other than the service call. The circuit court found that the language was ambiguous, considering extrinsic evidence, and construed the terms of the lien release in favor of Cummins:

[T]here was nothing in the proof, circumstantial or otherwise, to indicate that Cummins knew that by accepting the check for $2,748.16 that it was releasing its right to be paid for the gener-

ator. The definition of waiver requires full knowledge of material facts and an action which is inconsistent with the right or intention to rely upon the right.

A waiver requires consideration.... There was nothing [in the lien release] to indicate that it [the check] was consideration for payment of the generator purchased by ARC.

The circuit court found that "Cummins provided the generator and was never paid for it" and hence, Tycor was unjustly enriched. Specifically, the circuit court found Tycor was unjustly enriched in the amount of $59,115.14 by its "retention of the generator at the work site ... for the project owner, and the failure of the bonding company to pay for it."

The circuit court also found that Cummins could recover under the bond based on Tycor's unjust enrichment:

The purpose of the bond under A.C.A. section 18–44–501, et seq. was to provide for unforeseen eventualities. Tycor was obligated to provide the generator under the overall set of contracts, and for Tycor to not pay for it is a windfall benefit to Tycor[.]

The circuit court denied Tycor's defensive claims of detrimental reliance, estoppel, and payment on the ground that Tycor did not meet its burden to assert the defenses. In its final finding, the circuit court found that the bond should have covered the generator: "The purpose of the statute requiring a bond for public works projects is to provide for payment of subcontractors of materialmen in cases such as this." The circuit court awarded Cummins $59,115.14 plus costs, 12% penalty, prejudgment and postjudgment interest, and attorney's fees.

## III. *The Lien Release*

The release at issue in this appeal is a type of contract between the

parties and is interpreted pursuant to the rules of contract interpretation. *Wal–Mart Stores, Inc. v. Coughlin*, 369 Ark. 365, 371, 255 S.W.3d 424, 429 (2007). The first rule of contract interpretation is to give to the language employed the meaning that the parties intended. *Id.* If the language of the policy is unambiguous, we will give effect to the plain language of the policy without resorting to the rules of construction. *Elam v. First Unum Life Ins. Co.*, 346 Ark. 291, 297, 57 S.W.3d 165, 169 (2001). Whether ambiguity exists is ordinarily a question of law for courts to resolve. *Machen v. Machen*, 2011 Ark. App. 47, 380 S.W.3d 497. An issue involving a question of law is reviewed de novo. *Travis Lumber Co. v. Deichman*, 2009 Ark. 299, 319 S.W.3d 239. Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one equally reasonable interpretation. *Machen, supra.* We must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning. *Id.*

Our supreme court has set forth the function of the court when there is a question concerning the clarity of the terms of a contract:

> [W]here there is a dispute as to the meaning of a contract term or provision, be it an insurance or other contract, the trial court must initially perform the role of gatekeeper, determining first whether the dispute may be resolved by looking solely to the contract or whether the parties rely on disputed extrinsic evidence to support their proposed interpretation. As Justice George Rose Smith explained, "[t]he construction and legal effect of written contracts are matters to be determined by the court, not by the jury, except when the meaning of the language depends upon disputed extrinsic evidence." Thus, where the issue

of ambiguity may be resolved by reviewing the language of the contract itself, it is the trial court's duty to make such a determination as a matter of law.

*Elam,* 346 Ark. at 297, 57 S.W.3d at 169–70 (internal citations omitted).

■ After careful examination of the lien release written by Tycor and signed by Cummins, we hold that the trial court erred in finding its language ambiguous, and we reverse.

We cannot say that the language of the lien release is ambiguous, looking only on the face of the document. The release is entitled at the top of the document: "SUBCONTRACTOR/MATERIALMAN UNCONDITIONAL WAIVER AND RELEASE UPON FINAL PAYMENT." It contains the statements that the release "covers the full and final payment of the contract amount for labor, services and equipment, or material furnished on the job of Armed Forces Reserve Center." The release clearly sets forth that the person who signs the document waives any bond right he or she may have: "[T]he undersigned hereby releases and waives any mechanics' lien, stop notice, or bond right he/she/it has on the said job." The language is clear that Cummins releases any bond right it may have against Tycor concerning the Armed Forces Reserve Center job. There is no ambiguity, and therefore no call to look beyond the plain language of the contract.

We hold that the circuit court erred in finding the language of the release ambiguous, and on this point, we reverse.

## IV. *Waiver and Unilateral Mistake*

■ Waiver is the voluntary abandonment or surrender by a capable person of a right known by him to exist, with the intent that he shall forever be deprived of its benefits, and it may occur when one,

with full knowledge of the material facts, does something that is inconsistent with the right or his intention to rely upon it. *Taylor v. Hamilton,* 90 Ark. App. 235, 205 S.W.3d 149 (2005). Whether a waiver occurred is a question of intent, which is usually a question of fact. *Beal Bank S.S.B. v. Thornton,* 70 Ark. App. 336, 19 S.W.3d 48 (2000). Therefore, on the issue of waiver, we do not reverse the circuit court's finding of fact unless it is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Essential Accounting Sys., Inc. v. Dewberry,* 2013 Ark. App. 388, 428 S.W.3d 613.

A contractual stipulation can only be withdrawn on grounds for nullifying a contract, meaning fraud or misrepresentation. *Bishop v. Bishop,* 60 Ark. App. 164, 961 S.W.2d 770 (1998). There can be no rescission on account of the mistake of one party only, where the other party was not guilty of any fraud, concealment, undue influence, or bad faith, and did not induce or encourage the mistake, and will not derive any unconscionable advantage from the enforcement of the contract. *Lowell Perkins Agency, Inc. v. Jacobs,* 250 Ark. 952, 469 S.W.2d 89 (1971). A unilateral mistake is a subjective matter and a court will not reform or rescind a contract involving a unilateral mistake except where fraud is involved. *Foshee v. Murphy,* 267 Ark. 1047, 593 S.W.2d 486 (1980). The fact that a party entered into an agreement which later appeared improvident to him or her is no ground for relief. *Helms v. Helms,* 317 Ark. 143, 875 S.W.2d 849 (1994).

In *Fitzwater v. Lambert and Barr, Inc.,* 539 F.Supp. 282 (W.D.Ark. 1982), the court addressed the issue of unilateral mistake and release. In that case, the plaintiffs were driving when they were struck from the rear by a vehicle driven by an employee of the defendant. A few months after the accident, the plaintiffs signed a release settling their claims and releasing the defendants from any claims stemming from the accident, known or unknown. The release also stated that the extent of the injuries of the plaintiffs was unknown at the time they signed the release. The plaintiffs noted on the release that they read and understood that the document settled all claims. Later, as other injuries arose from the accident, the plaintiffs filed a claim asserting mutual mistake, among other claims. The court found that the plaintiffs made a unilateral mistake, and there was no evidence of fraud on the part of the defendants. In its discussion, the court set forth the nature of unilateral mistake and how it relates to waiver:

> The evidence is undisputed that the plaintiffs read the release. It is beyond question that plaintiffs knew the character of the release and understood the consequences of executing it. The release is clear, plain, simple, and unambiguous in all respects. It may indeed be true that plaintiffs failed to appreciate the seriousness of the injury, but startlingly clear hindsight will not render the acts of one laboring under erroneous foresight void ab initio. That plaintiffs' signing of the release was perhaps unwise, and in retrospect unfortunate, is not sufficient to avoid it.

*Id.* at 291 (internal citations omitted). The facts in the present case are analogous. The terms of the release are unambiguous, as discussed above. The document is signed by Whitehead, who holds a master's of business administration from Kellogg University, and at the time of trial had been the CFO at Cummins Mid–South for fourteen years where he specialized in

credit-related administration, specifically handling aging accounts receivable. Prior to that, he had worked at Cummins, Inc. (a related business that led to the formation of Cummins Mid–South) for eight years. At trial, he testified that he signed releases in the everyday course of his work, that he understood the nature of release forms, and that he understood signing a release waived any claim Cummins would have on that job. He testified that he read the waiver and release before he signed it, but did not contact anyone at Tycor before he signed it.

Furthermore, Cummins put on no evidence that Tycor defrauded Cummins into signing the release, and in its order the circuit court did not make any finding of fraud on Tycor's part necessary to assert unilateral mistake as a defense. Instead, the circuit court erroneously relied upon its finding of ambiguity in the language of the release and construed the language of the release based on extrinsic evidence. The circuit court's construction of the lien led to its erroneous finding that waiver did not occur.

The unambiguous language of the release informed Whitehead that the right to recover on the bond, a right known to him to exist, was waived upon signing, and unilateral mistake without a showing of fraud on the part of Tycor does not allow Cummins to rescind the release. Thus, we hold that the circuit court erred in finding that Cummins did not waive its right to recover on the bond, and on this point we reverse.

## V. *Unjust Enrichment*

■ Tycor asserts on appeal that the circuit court erred in finding that Cummins was able to recover under the doctrine of unjust enrichment. We agree, and we reverse. In the present case, the issue of whether the doctrine of unjust enrich-

ment applies is a question of law. Generally, the standard of review on appeal from a bench trial is whether the trial court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Hall v. Bias*, 2011 Ark. App. 93, 381 S.W.3d 152. However, a circuit court's conclusion on a question of law is reviewed de novo and is given no deference on appeal. *Id.*

■ Unjust enrichment is an equitable doctrine. *First Nat'l Bank of De-Witt v. Cruthis*, 360 Ark. 528, 203 S.W.3d 88 (2005). It is the principle that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly. *Adkinson v. Kilgore*, 62 Ark. App. 247, 970 S.W.2d 327 (1998). However, the concept of unjust enrichment has no application when an express written contract exists. *Id.*

■ In *Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 362 Ark. 598, 612, 210 S.W.3d 101, 112 (2005), our supreme court addressed the issue of whether an express contract applies to claims against third parties. The court followed the Second Circuit Court of Appeals which held that it is a "settled principle" that "the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the same subject matter." *See U.S. E. Telecomm., Inc. v. U.S. W. Commc'n Servs., Inc.*, 38 F.3d 1289, 1296 (2d Cir. 1994). Our supreme court also noted that in *U.S. East Telecommunications* the Second Circuit held, "[A] subcontractor could

recover from a landowner, even when a separate contract exists between the subcontractor and general contractor, if the owner has agreed to pay the general contractor's debt or if the circumstances surrounding the parties' dealings can be found to have given rise to an obligation to pay." *Id.* at 1298. However, in the present case, as in *Servewell*, there is no evidence of any such agreement, therefore, this exception is not applicable. The general rule is that one cannot recover in quasi-contract when an express contract exists, and governs the matter in the present case. *See Servewell*, 362 Ark. at 612, 210 S.W.3d at 112. A written contract for the purchase and installation of the generator existed between ARC and Cummins; therefore, Cummins is barred from asserting the doctrine of unjust enrichment. Therefore, as a matter of law, we hold that the circuit court erred in applying the equitable remedy of unjust enrichment in light of the existing contract, and we reverse on this point.

Reversed.

Gruber and Glover, JJ., agree.