Cite as 2021 Ark. App. 91

# ARKANSAS COURT OF APPEALS
## DIVISION II
**No.** CV-20-225

| | |
|---|---|
| | **Opinion Delivered:** February 24, 2021 |
| CYNADEL WILBANKS | |
| APPELLANT | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23DR-13-1221] |
| V. | |
| ROGER D. WILBANKS, JR. | HONORABLE SUSAN WEAVER, JUDGE |
| APPELLEE | |
| | AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant Cynadel Wilbanks appeals the Faulkner County Circuit Court's order granting appellee Roger Wilbanks's motion to modify custody. On appeal, appellant argues that appellee is barred by waiver, equitable estoppel, and laches from seeking to change custody on the grounds asserted. We affirm.

Pursuant to the parties' divorce decree entered in December 2013, the parties shared joint custody of their minor children, with their son, L.W., living with appellee and their daughter, A.W., living with appellant. Neither party was ordered to pay child support. On July 18, 2018, appellee moved to modify the custody arrangement asserting there had been a material change of circumstances based on appellant's overseas travel meriting a change of custody from joint to sole custody with appellee.[1] Specifically, appellee stated that

---

[1]The parties' son, L.W., had reached the age of majority prior to the filing of appellee's motion to modify custody.

subsequent to entry of the parties' divorce decree, appellant had "been living overseas and leaving daughter with the [appellee] during the school year and then returning in the summer for visitation." Appellant responded, asserting the affirmative defenses of waiver, equitable estoppel, and laches. She claimed that in the five years since the parties' divorce, it had been their course of conduct for appellant to leave A.W. with appellee during the extended periods of time during which appellant was out of the country visiting her new husband. Appellant stated that until recently, when appellee remarried, the parties worked well together regarding custody to account for her extended overseas travel and that appellee never objected to the arrangement prior to filing the petition for modification of custody.

Appellant additionally countermotioned for modification stating that appellee's wife had been verbally and physically aggressive toward her in the presence of A.W. and that such behavior does not promote love, respect, and admiration for appellant but is instead divisive and adverse to the best interest of A.W. Appellant requested that the circuit court modify its prior order providing that, absent an emergency, communications relating to the children should be between the parents, and the prior provisions about fostering love and respect should apply to stepparents as well as the parties, among other things.

Following a temporary hearing held on September 21, 2018, the circuit court denied a change of custody finding no material change of circumstances had occurred since entry of the parties' divorce decree. On November 13, appellant filed a motion for support modification stating that L.W. had recently moved in with her thereby making appellant now solely financially responsible for both of the parties' children. Appellant requested that the court order appellee to pay child support for both of the children. She specifically stated

that although L.W. had reached the age of majority, he was still attending high school, and child support was appropriate for the noncustodial parent to pay until such time as L.W. graduates from high school.

On October 4, 2019, following the final hearing, the circuit court entered an order finding that appellant's relocation and time out of the country constituted a material change in circumstances and that it was in A.W.'s best interest for appellee to be awarded sole custody. The circuit court ordered appellant to pay child support in the amount of $26 a week. The circuit court also found that appellant was entitled to child support for the six-month time period that L.W. moved out of appellee's house and lived with appellant from November 2018 until he graduated from high school in May 2019. Appellant now appeals.

Our standard of review in child-custody matters is well settled. We review the evidence de novo but will not reverse a circuit court's findings of fact unless they are clearly erroneous.[2] Because the question of whether the circuit court's findings are clearly erroneous turns largely on the credibility of the witnesses, we give special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest.[3] There are no cases in which the superior position, ability, and opportunity of the circuit court to observe the parties carry as great a weight as those involving minor children.[4]

---

[2] *Killingsworth v. Dittmar*, 2018 Ark. App. 294, 552 S.W.3d 1.

[3] *Id.*

[4] *Id.*

On appeal, appellant argues that appellee is "prevented by waiver, equitable estoppel, and laches from asserting her travel to the Middle East justifies a change in custody." Consequently, she contends that the circuit court erred in granting appellee's motion to modify custody and awarding him primary custody of A.W.

The doctrine of waiver is a voluntary abandonment or surrender by a capable person of a right known by him to exist with the intent that he shall forever be deprived of its benefits, and it may occur when one, with full knowledge of the material facts, does something that is inconsistent with the right or his intention to rely upon it.[5] Whether a waiver occurred is a question of fact.[6] Appellant argues that appellee knew their course of conduct was inconsistent with the custody arrangement outlined in the divorce decree, yet for five years he did not object. Appellant contends that because appellee was aware that the parties were "operating differently" than the terms of the decree provided, appellee waived his right to do so now, and the circuit court erred by not applying the equitable doctrine of waiver.

The elements of equitable estoppel are (1) the party to be estopped must know the facts; (2) the party must intend that its conduct shall be acted on or must so act that the party asserting estoppel had a right to believe that the other party so intended; (3) the party asserting estoppel must be ignorant of the facts; and (4) the party asserting estoppel must rely

---

[5]*Travelers Cas. & Sur. Co. of Am. v. Cummins Mid-S., LLC*, 2015 Ark. App. 229, 460 S.W.3d 308.

[6]*Id.*

4

on the other party's conduct to his detriment.[7] Appellant argues that the circuit court should have found that appellee was equitably estopped from asserting her travel as a basis for changing custody. In support of her argument, appellant states that

> "[h]e knew the facts, unquestionably, that [appellant] was travelling, where A.W. was living, and what the decree actually said. The entire basis for the agreement was for [appellant] to travel to see her husband, so she had every right to rely on the agreement. [Appellant] had no way to know [appellee] would use the agreement to alter custody because [appellee] never informed her of any disagreement with it. And [appellant] relied on the agreement to her detriment, the detriment being this custody dispute. [Appellee] did an act or a thing (the agreement with respect to travel) on which [appellant] relied, and [appellant], who had the right to rely on it, has been injured by that reliance."

Lastly, under the doctrine of laches, a court may refuse relief where it is sought after undue and unexplained delay and where injustice would be done in the particular case by granting the relief sought.[8] Usually, the two most important circumstances in such cases are the length of the delay and the nature of the acts during the interval, which might affect either party and cause a balance of justice or injustice in taking the one course or the other insofar as it relates to that remedy.[9] Appellant asserts that she relied on appellee's inaction and failure to object for five years, and the circuit court's failure to apply laches was an abuse of discretion.

The best interest of the child is the polestar in every child-custody case; all other considerations are secondary.[10] Appellant has failed to cite any cases in which our courts

---

[7]*Chitwood v. Chitwood*, 92 Ark. App. 129, 211 S.W.3d 547 (2005).

[8]*Lewis v. Lewis*, 87 Ark. App. 30, 185 S.W.3d 621 (2004).

[9]*Id.*

[10]*Skinner v. Shaw*, 2020 Ark. App. 407, 609 S.W.3d 454.

5

have applied the equitable doctrines in child-custody cases.[11] In fact, appellant acknowledges that there are no cases in which our courts have done so but asserts that waiver, equitable estoppel, and laches "logically ought to" apply to change-of-custody cases and urges our court to do so for the first time now. We decline to replace a best-interest-of-the-child determination with an equitable-doctrine analysis.

In custody-modification cases, courts impose more stringent standards than they do for initial determinations of custody in order to promote stability and continuity in the life of the child and to discourage the repeated litigation of the same issues.[12] A judicial award of custody should not be modified unless it is shown that there are changed conditions that demonstrate that a modification of the decree is in the best interest of the child or when there is a showing of facts affecting the best interest of the child that were either not presented to the circuit court or were not known by the court when the original custody order was entered.[13] The party seeking to modify the custody order has the burden of showing a material change in circumstances has occurred since the last custody order; if that threshold requirement is met, it must then determine who should have custody, with the sole consideration being the best interest of the child.[14]

---

[11]Although appellant cites several domestic-relations cases in which Arkansas courts have applied equitable doctrines, the cases are related to child-support issues and not child-custody determinations. A child-support award is subject to equitable defenses. *See Miller v. Ark. Office of Child Support Enf't*, 2015 Ark. App. 188, 458 S.W.3d 733.

[12]*Faulkner v. McCain*, 2020 Ark. App. 541, 613 S.W.3d 746.

[13]*Id.*

[14]*Id.*

6

Here, the circuit court found that the significant amount of time appellant spent out of the country on her frequent trips to the Middle East constituted a material change of circumstances. The circuit court further found that it was in A.W.'s best interest for appellee to be awarded primary custody. Appellant does not challenge either of these findings; therefore, we need not address them further.

In every child-custody case, all other considerations are secondary to the best interest of the child.[15] Because appellant does not challenge the circuit court's material change of circumstances or best-interest finding and only invites this court to apply the affirmative defenses of waiver, equitable estoppel, and laches in a manner inconsistent with our well-settled case law that places the child's best interest first with all other considerations secondary, we cannot say that the circuit court abused its discretion in failing to apply the equitable doctrines.

Affirmed.

GLADWIN, J., agrees.

MURPHY, J., concurs.

**MIKE MURPHY, Judge, concurring**. I agree with the majority that this case should be affirmed. I write separately because the result of this case, at first blush, could reasonably lead one to believe that it would never behoove a parent to work with the other parent on scheduling or other parenting changes because it might be used against them later in the event of litigation.

---

[15] *See Skinner, supra.*

And Cynadel's point is well-taken. These results do not seem fair. The parents, after all, agreed to modifications in their custody schedule, and the minute Roger expressed dissatisfaction with the arrangement (or, at a minimum, when he filed a motion for change of custody), Cynadel canceled her future travel plans and began abiding by the language of the original decree. She continued to abide by that decree until the final hearing, a full year after Roger filed his motion for change of custody.

Cynadel asserted that Roger should be estopped from using her agreed-to conduct as a basis for a material change of circumstances for change-of-custody purposes. In a way, I agree with Cynadel that he should be estopped; however, I do not agree that equitable-defense doctrines are the way to do it in child-custody cases.

We have a tendency, in Arkansas, to box change-of-custody discussion into a rather rigid two-prong analysis. First, was there a material change in circumstances? Second, and only if there was, do we then determine if a change in custody is in the best interest of the child. In fact, we have numerous cases outlining this as a two-step approach in which "the trial court 'must first determine that a material change in circumstances has transpired from the time of the divorce decree and, then, determine that a change of custody is in the best interest of the child.'" *Singletary v. Singletary*, 2013 Ark. 506, at 9, 431 S.W.3d 234, 240 (quoting *Lewellyn v. Lewellyn*, 351 Ark. 346, 93 S.W.3d 681 (2002)). I myself have unreservedly relied on this formula when it was framed as such by the circuit court or the parties. *See, e.g.*, *Ellington v. Ellington*, 2019 Ark. App. 395, at 6, 587 S.W.3d 237, 241 ("Because we hold that there was no material change in circumstances sufficient to support a change of custody, we need not address the best-interest finding.").

It's easy, then, to see Cynadel's logic: if she can prevent some conduct from being used as a material change in circumstances, the case would be over. But doing so would not be consistent with our unwavering polestar of custody law that "the *primary* consideration in child-custody cases is the welfare and best interests of the children involved; all other considerations are *secondary*." *Dansby v. Dansby*, 87 Ark. App. 156, 160, 189 S.W.3d 473, 476 (2004) (emphasis added); *see also Pace v. Pace*, 2020 Ark. 108, at 13, 595 S.W.3d 347, 354 (Womack, J., concurring). And this is harmonious with the recited reason for having a material-change "prong" to begin with: "to promote stability and continuity for the children and to discourage repeated litigation of the same issues." *Dansby*, 87 Ark App. at 165, 189 S.W.3d at 479–80. In a way, material change is not separate from best interest, but part and parcel of it.

This is confirmed by the fact that we also have cases that combine both prongs of the test into a single statement. *Lloyd v. Butts*, 343 Ark. 620, 37 S.W.3d 603 (2001) (defining the test as whether there have been any material changes demonstrating that a modification is in the best interest of the child); *Campbell v. Campbell*, 336 Ark. 379, 985 S.W.2d 724 (1999) (defining the test as whether there has been a material change in circumstances that affects the welfare of the child). As such, I agree the court did not err when it chose not to apply these defenses. After all, we would hate to see a scenario in which the agreed-to behavior was unconscionable, but the agreeing parent didn't have the resources to challenge it and was then later foreclosed from seeking a change of custody because of it.

Which leads me to my final point—that courts and practitioners should not read this case and the majority opinion as one that discourages parents from informally agreeing to

modifying custodial and parenting arrangements. Because, had this case been presented as one in which (1) the parents agreed to certain changes in the custody schedule and (2) at the first indication of issues with those previously agreed changes the parents had immediately fallen back into compliance with the original decree, I would be hard-pressed to say that any changes existed that were so material that modification of that original decree would be necessary.

*The Bargar Law Firm, P.A.*, by: *James L. Bargar*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellant.

*McKinney & McKinney, PLLC*, by: *Jared C. McKinney*, for appellee.