CONTINENTAL INSURANCE COMPANIES *v.* ESTATE OF ANDREW DAVID ROWAN JR.

5-5956                                            482 S.W. 2d 102

Opinion Delivered July 3, 1972

[As Amended on Denial of Rehearing September 25, 1972.]

*Dickey, Dickey & Drake,* for appellant.

*George Howard Jr.,* for appellee.

J. FRED JONES Justice. This is an appeal by Continental Insurance Companies from an order of the Jefferson County Probate Court ordering Mrs. Florida Rowan, prior guardian of the estate of Andrew David Rowan, Jr., to account to L. E. Henson, guardian in succession of said estate, for the sum of $2,731.40 received by Mrs. Rowan as guardian, and further ordering Mrs. Rowan to pay over to said guardian in succession the sum of $2,731.40 belonging to the estate of said minor within a reasonable length of time.

This is a second appeal of this case and the record on this appeal is about as mixed up as in the former appeal. Part of the difficulty stems from the fact that the first appeal by Continental was from a judgment prematurely rendered against it on a guardian's bond before the liability of the guardian had been determined, and the present appeal by Continental is simply in anticipation that a judgment may be rendered against it on the guardianship bond.

In the first appeal, *Continental Insurance Companies v. Estate of Andrew David Rowan, Jr., a Minor,* 250

Ark. 724, 466 S. W. 2d 942, Mrs. Rowan had been appointed guardian of the estate of her minor son and had executed a guardian's bond in the amount of $9,000 with Continental Insurance Companies as surety. Thereafter the probate court on its own motion removed Mrs. Rowan as guardian because of her failure to file an inventory of the assets of the estate, and the court appointed Mr. Henson as guardian in succession, whereupon Mr. Henson filed a motion for judgment against Continental in the amount of whatever funds Mrs. Rowan had received as guardian and failed to report or account for. Continental resisted the motion on the ground that the principal's liability should first be determined before the entry of any judgment against the surety. We agreed with Continental and remanded the case for further proceedings.

The record now before us leaves much to be desired but it appears from the entire record that Continental is attempting to avoid the possibility of a judgment against it by avoiding a judgment against Mrs. Rowan. The background facts as we gather them from the entire record, indicate that Andrew David Rowan, Sr., the deceased husband of Florida Rowan and the father of Andrew David Rowan, Jr., left some life insurance policies at his death and in at least one of them, in the amount of $2,731.40, Andrew David Rowan, Jr. was the named beneficiary. Mrs. Rowan was appointed personal representative of the decedent as well as guardian of the estate of her minor son who was then 18 years of age. Attorney George Howard, Jr. represented Mrs. Rowan as administratrix of the decedent's estate as well as guardian of her son's estate. It appears that an administratrix's account was opened in a local Pine Bluff bank and that some of decedent's estate funds were collected and deposited therein with attorney Howard's co-signature required on checks of withdrawal.

Mrs. Rowan is a professional school teacher and spends most of her summer vacations away from her home in Pine Bluff while attending college refresher courses. It appears that while she was attending college in Russellville, Arkansas, she received the proceeds from the above mentioned insurance policy in a check made payable to her as guardian of the estate of young Rowan. Instead of ad-

vising or counseling with attorney Howard or the court, and instead of opening a guardianship account in a bank and depositing the insurance money therein, both she and young Rowan endorsed the check and she cashed it. She apparently mingled the proceeds from the insurance with her own funds and with young Rowan's knowledge and consent used most of the money in making a downpayment on the purchase of a home, in which she took title in her own name and subsequently lost through a mortgage foreclosure, and in liquidating some accounts owed by her mother and a cousin.

Apparently when Mrs. Rowan was finally made to realize that she had no personal right to, or interest in, the guardianship funds of her ward, her own financial resources were exhausted and instead of rendering a guardianship report of the exact amount she received as guardian and the exact nature and amounts of the disbursements, she apparently confused her personal rights as mother of her son with her legal responsibilities as guardian of his estate and she failed and refused to render an accounting at all. Finally, the probate court on its own motion, ordered Mrs. Rowan's removal as guardian and appointed L. E. Henson as guardian in succession. Mr. Howard continued to serve as attorney for Mr. Henson.

Upon remand to the trial court following the former appeal, Mr. Henson filed his petition for an order requiring Mrs. Rowan to file her settlement or accounting of her administration of her ward's estate and for an order requiring Mrs. Rowan to pay over and deliver to the guardian in succession the funds or assets found to be due. Continental was given notice of a hearing on this petition and Continental filed its own petition alleging that the ward, Andrew David Rowan, Jr., had become 21 years of age and was a necessary party to the proceedings. By amendment to its petition Continental alleged that since attaining his majority Andrew David Rowan, Jr. had disclaimed any interest in the funds used by his mother and disclaimed any desire to recover judgment against his mother, the former guardian of his estate. But in the alternative, Continental prayed that in the event a judgment should be rendered against it on Mrs. Rowan's bond, that it have judgment

over against Mrs. Rowan in the identical amount. Mrs. Rowan and Andrew David Rowan, Jr. signed this amendment to Continental's motion under statement as follows:

"Service accepted by us in open court on the 27th day of August, 1971."

Apparently the trial court accepted the Rowans' signatures on the amendment to Continental's motion as their entry of appearance for all purposes and considered them as joining in the amended motion ot Continental while acting as their own attorneys.

Mrs. Rowan as well as Andrew David, Jr. testified at the hearing on the petition and motion, and young Rowan stated on inquiry from the court, that he was appearing as his own counsel. It would serve no useful purpose to set out in detail the conflicting testimony of Mrs. Rowan. While she testified that she actually turned over the sum of $731.40 of the insurance proceeds to her son while he was away in college, we gather from her entire testimony that she simply did not know exactly how much of the insurance proceeds was sent to her son, nor what portion of the funds was used for his direct benefit and what portion was used for other purposes. The record is rather clear that Mrs. Rowan and her son enjoyed a rather close mother and son relationship and that she simply considered the funds collected for her son on the insurance policy as *their* funds to be used as they saw fit, and considered that it was all used, together with funds of her own, for the use and benefit of her ward. Mrs. Rowan testified that no one ever told her that it was necessary to keep separate the guardianship funds from her own funds and to obtain approval of the court for its disbursement. This testimony is contradicted by statements of the trial judge as to the difficulties encountered in trying to get Mrs. Rowan to render an accounting. The record however, or the lack of it, indicates that Mrs. Rowan collected and used the insurance money before the probate judge or anyone else besides Mrs. Rowan and her ward knew it had been collected from the insurance company.

It is evident from the record in this case that young Rowan is above the average in intelligence and there is

no evidence that Mrs. Rowan has not been successful in directing his interests toward a good education. He testified that he is attending the University of Nebraska on a National Merit Scholarship and is a senior in the top quarter of his class. He testified that upon graduation from the University of Nebraska he plans to study in Europe where his further education will be financed by his mother. Young Rowan apparently recognizes and appreciates the difficulties his mother has placed herself in by not seeking the advice of counsel or instructions from the court upon her appointment as guardian; or in not following the advice she did receive from the attorney and instructions from the court in the performance of her duties as guardian.

As the record now stands, it is clear from young Rowan's testimony that since attaining his majority he accepts the expenditure of his funds by his mother as being made for his use and benefit and has ratified his mother's action in connection therewith. It is also clear that he does not desire his guardian in succession to pursue the collection from his mother, for his use and benefit, the funds his mother has collected as his guardian.

The record before us is vague as to what claims, if any, have been filed or will be filed against the estate of young Rowan. The record is also void of any indication as to what duties are still required of the guardian in succession except to collect from Mrs. Rowan and pay the court costs, together with the attorney's fee pertaining to the guardianship, which cost has not been ascertained and which attorney's fee has not been separated from the fees paid and payable in connection with the administration of the decedent's estate.

There is some indication in the record, primarily from the statement of the probate judge, that there may be additional insurance policies involved in the guardianship beside the one for $2,731.40 collected by Mrs. Rowan. The judge observed from the bench that from the original petition (which is not before us in this case), young Rowan

had $9,000 coming to him from insurance policies and that the court had mentioned the matter to Mr. Howard quite frequently. Mrs. Rowan testified that she delivered all of the insurance policies to the court. The probate judge stated from the bench that he had turned the policies over to attorney Howard with directions to determine whether collections had been made on them.

It may be that the guardian in succession is still attempting to collect on these insurance policies, but be that as it may, young Rowan testified at length under questioning by the court as well as the attorneys and it was well established by his testimony that he is now 22 years of age and does not desire that the guardian in succession continue in his attempts to collect funds for his benefit from Mrs. Rowan. See *Dunbar* v. *Cooke,* listed in 201 Ark. 1185, and reported in 147 S. W. 2d 337; *Dale* v. *Dale,* 134 Ark. 61, 203 S. W. 258. See also *Robinson* v. *Hammons,* 228 Ark. 329, 307 S. W. 2d 857.

Under Ark. Stat. Ann. § 57-643 (Repl. 1971) pertaining to termination of guardianship, subsection b provides:

"A guardianship may be terminated by court order after such notice as the court may require:

(1) If the guardianship was solely because of the ward's minority and the ward attains his majority . . .but if the court finds upon a proper showing by substantial competent evidence that it is in the best interest of the ward that the guardianship be continued after the ward reaches majority, the court may order the guardianship to continue until such time as it may be terminated by order of the court.

\* \* \*

c. When a guardianship terminates otherwise than by the death of the ward, the powers of the guardian cease, except that a guardian of the estate may make disbursements for claims that are or may be allowed

by the court, for liabilities already properly incurred for the estate or for the ward, and for expenses of administration. . . ."

The record before us is void as to any showing that it is in the best interest of young Rowan that the guardianship of his estate be continued or as to the existence or extent of liabilities of the estate, so we are unable to determine why the probate court did not ascertain from Mr. Rowan, Jr. whether he desired a discharge of the guardian in succession and to take over any remaining assets of his estate, to the end that the guardianship could be terminated and expenses stopped.

It is apparent from the record before us that young Rowan was pushed to the front in this case in a very awkward manner by his mother's bonding company but nevertheless he testified without contradiction that he has been 21 years of age for almost a year; that he ratifies the acts of his mother in the use of his funds and does not want to pursue the collection of any amount from her. The primary purpose in a guardianship for a minor's estate is to preserve and protect the assets of his estate during his minority and is not to educate or punish a difficult guardian after the primary purpose of the guardianship ceases.

From the record now before us we are of the opinion that the probate court should have ascertained and approved the legitimate claims, if any, against the guardianship estate of young Rowan, including attorney's fees and court costs. If there are money assets belonging to young Rowan still in the hands of the guardian in succession in sufficient amount to pay all such claims, they should be paid out of such assets, and any balance should be paid to young Rowan and the guardianship closed. If there is not such amount in the hands of the guardian in succession, then Mrs. Rowan should be ordered to pay such amount by a definite date fixed by the court. If such amount be not paid within such time, then a judgment should be rendered against Mrs. Rowan and her bonding company only for the amount of such claims, including legitimate costs and attorney's fees incident to the guardianship.

Reversed and remanded with instructions to proceed in a manner not inconsistent with this opinion.

Reversed and remanded.