## J. B. HARRISON, Jr. *v.* BENTON STATE BANK, Guardian of Lillie B. BECKWITH

CA 82-102                                        642 S.W.2d 331

Court of Appeals of Arkansas
Opinion delivered November 17, 1982

356

*Sam Ed Gibson, P.A.,* for appellant.

*Bob Alsobrook,* for appellee.

TOM GLAZE, Judge. This probate case involves the liability of a surety, appellant J. B. Harrison, Jr., on a bond filed in the guardianship of Lillie B. Beckwith, an incompetent. The bond provided that Harrison and A. D. Parsons, as sureties, were jointly and severally obligated for the

lawful administration of the ward's estate by her guardian, Edward Elmore. Unfortunately, Elmore unlawfully withdrew $12,900 for his personal use, and Beckwith's family subsequently petitioned to remove him. A successor guardian, Benton State Bank (Bank), was appointed in his stead. Elmore later filed his first and final accounting to which the Bank objected. At a hearing on the Bank's objections, the court found the amount owed the estate by Elmore was $12,250 and it entered judgment against Elmore, Parsons and Harrison in that amount. Harrison appealed from that judgment, and we reversed for a reason not relevant here. On remand, a new trial was held and a judgment was again entered against Elmore, Parsons and Harrison for $8,417.11. The second judgment was less than the first because Elmore and Parsons paid $3,832.89 after the first judgment was entered, thereby reducing the amount owed the estate.

In this second appeal, Harrison first argues that he was excused from his obligations on the bond because a plea bargain agreement was consummated in a criminal proceeding brought against Elmore for theft, a charge resulting from his wrongful withdrawal of funds from the Beckwith's estate. The essence of the plea bargain was that Elmore would reimburse the estate by making periodic payments to the Bank and in return, Elmore would receive a suspended sentence. Apparently, the prosecuting attorney obtained the Bank's approval before the plea bargain agreement was entered. Harrison contends this plea bargain agreement was a novation which discharged his obligation to pay the monies owed the estate. He also cites *Continental Insurance Companies* v. *Rowan*, 250 Ark. 724, 466 S.W.2d 942 (1971), and argues that as a surety, he cannot be liable to the estate in a greater amount *or* "in any way differently from the way" in which the principal, Elmore, is liable, Harrison's argument is a misstatement of the rule in *Rowan*.

In *Rowan*, the successor guardian filed an action directly against the surety without first proceeding against and establishing the liability of the principal/initial guardian who had been removed. The court held that before the successor guardian could sue the surety, he was required

to obtain a settlement or accounting from the principal and an order directing the principal to pay over the sum found due the estate. In recognizing the soundness of this procedure, the court noted the rule, on which Harrison now relies, that the surety's liability is derivative and ordinarily does not exceed that of the principal.

Here, the Bank proceeded against Elmore, established his liability to the estate in the sum of $8,417.11 and obtained a judgment against Elmore, Parsons and Harrison. The judgment also directed that after Harrison has paid the $8,417.11 he must be reimbursed by the estate from any money it receives from Elmore. The rule in *Rowan* limits Harrison's liability to the amount Elmore owed the estate. The rule does not, however, discharge Harrison's liability merely because he is required to pay the debt owed the estate in a different way (in a lump sum) from that required of Elmore (in periodic payments).

Nor can we agree with Harrison's argument that the plea bargain agreement was intended as a novation to extinguish his surety obligation. The court in *Barton v. Perryman*, 265 Ark. 228, 577 S.W.2d 596 (1979), stated that a novation is the substitution by mutual agreement of one debtor, or of one creditor, for another, whereby the old debt is extinguished, or the substitution of a new debt or obligation for an existing one, which is thereby extinguished. We find no evidence that shows the parties intended, by their plea bargaining, to extinguish the judgment debt owed by Harrison. The judgment against Harrison, Parsons and Elmore remains unchanged and unsatisfied. The evidence clearly shows that Elmore consented to the plea bargain agreement to keep from going to the penitentiary — not to relieve Harrison of his obligation to the estate.

Aside from the parties' lack of intent to enter a novation, the facts here simply do not come within the definition of a novation as that term is set forth in the Restatement of the Law on Contracts. Section 424 of that Restatement provides:

A novation . . . is a contract that

(a) discharges immediately a previous contractual duty or a duty to make compensation, and

(b) creates a new contractual duty, and

(c) *includes as a party one who neither owed the previous duty* nor was entitled to its performance. [Emphasis supplied].

Obviously, Elmore owed a duty to pay the subject debt to the Beckwith estate; it was his breach of guardianship duties that obligated him, Parsons and Harrison. In fact, he remains liable on that debt as is evidenced by the judgment still pending against him and his sureties. In sum, we affirm the trial court's finding that no novation existed and that, contrary to Harrison's contention, the action against him on the debt was not premature or dischargeable under any rule contained in *Rowan.*

Harrison next contends that the court erred in finding that he was mentally competent at the time he signed the bond. On this point, we adopt the rule that a surety, like other parties to a contract, must have the requisite contractual capacity if he undertakes a personal obligation of suretyship. *Doty* v. *Mumma,* 305 Mo. 188, 264 S.W. 656 (1924); and 74 Am. Jur., Suretyship § 9; *see also Kelly's Heirs* v. *McGuire,* 15 Ark. 555, 597 (1854). The Supreme Court in the landmark case of *Kelly's Heirs* v. *McGuire* discussed the relative law regarding the mental capacity to contract as follows:

> [T]he party to be charged in a contract, must not only express his assent that he will be bound, but he must be endowed with such degree of reason and judgment as to enable him to comprehend the subject. The assent, which is requisite to give validity to a promise, supposes a free, fair, and serious exercise of the reasoning faculty. *Chitty on Contracts* 134. *The law presumes there is full capacity to contract, and mental incapacity forms an exception to the general rule;* which must be shown by those who would set aside the contract. *Id.* 135.
>
> It would be wholly impracticable to lay down any exact general rule as to incapacity to contract; because

each case will be found influenced by its own peculiar circumstances. *But it may be freely admitted that mere weakness of understanding, is not, of itself, sufficient to invalidate a contract, if the person is capable of comprehending the subject.* [Emphasis supplied].

The circumstances in this case support the chancellor's finding that Harrison had the capacity to contract at the time he signed the surety bond. Harrison suffered and was treated for a stroke on July 15, 1978, forty-four days prior to his signing the bond on August 28, 1978. His family physician testified that he had no doubt that thirty days after the stroke Harrison was not capable of making rational judgment decisions and that he seriously doubted he could three months after. However, the doctor candidly admitted that, neurologically, Harrison had difficulty in pronouncing words but that no other neurological defects were observed. When the doctor saw him on August 31, 1978, Harrison had recovered his ability to speak, had no other signs or symptoms or any further strokes and was instructed to discontinue taking medication.

Harrison and his wife owned two businesses, a furniture store and a funeral home. Mrs. Harrison testified that shortly after her husband's stroke and subsequent release from the hospital, she had him sign checks and conduct certain business transactions. In fact, he executed a retail contract on August 24, 1978, four days before he signed Elmore's bond. Mrs. Harrison related that the doctor never stated that her husband was incompetent or lacked comprehension although she gave her opinion that he did lack comprehenson. She further testified that her husband "never refused to sign anything that I put in front of him between July, 1978, and the first of 1979." In sum, Mrs. Harrison, an experienced businesswoman, obviously did not believe her husband's mental capacity was diminished to the extent that he could not perform all the business matters she presented him. On these facts, we cannot say the chancellor was clearly erroneous in finding Harrison mentally competent when he signed Elmore's bond.

Finally, Harrison argues that the bond was not enforceable because it was not accompanied with qualifying affidavits, and it was not supported by consideration. He cites no legal authority and offers no real argument for either proposition. Therefore, we do not consider these two issues because they are not supported by convincing argument or authority. *Shannon* v. *Anderson,* 269 Ark. 55, 598 S.W.2d 97 (1980).

Affirmed.