2010 Ark. App. 616

**ESTATE OF Helen Virginia COAN, Appellant**

v.

**Michael P. GAUGHAN, Appellee.**

**No. CA 09–704.**

Court of Appeals of Arkansas.

Sept. 22, 2010.

Rehearing Denied Nov. 3, 2010.

Pat Marshall, Little Rock, Arthur R. Carmody, Jr., Shreveport, LA, Katherine Savers McGovern, Dallas, TX, for appellant.

Paul Everett Lindsey, Harrell, Lindsey & Carr, P.A., Camden, for appellee.

ROBERT J. GLADWIN, Judge.

The Estate of Helen Virginia Coan, deceased, through its co-administrators Thomas Carmody and Dr. Norman Savers, appeals the order of the Ouachita County Circuit Court awarding attorney's fees to appellee Michael Gaughan, a former co-administrator of the estate. The estate challenges the award of fees on several fronts. We affirm the circuit court's order.

This case is one in a series of appeals spawned by litigation over the estates of Helen Virginia Coan and her brother Joseph Coan, Jr.[1] The record reflects that Helen and Joseph inherited considerable sums of money upon the deaths of their parents. Helen was born with Downs Syndrome, and in 1977, the Probate Court of Ouachita County appointed Joseph as guardian of Helen's person and estate. Joseph died in 1984. In his will, Joseph established a testamentary trust for Helen's benefit during her lifetime. Linnie Betts, an employee of the bank where the Coan siblings' funds were held, succeeded Joseph as Helen's guardian. Betts also served as co-executor of Joseph's estate with Gaughan.

Helen died in January 2005. The circuit court appointed Betts and Gaughan as co-administrators of Helen's estate. In March 2006, the circuit court named Carmody and Savers as additional co-administrators of the estate. The following June, the circuit court removed Betts as co-administrator of Helen's estate upon the request of Carmody and Savers. Betts died after her removal.

In November 2006, Carmody and Savers, on behalf of Helen's estate and her heirs, filed suit against Betts's estate and others, claiming that Betts had misallocated funds and seeking a construction of Joseph's will pertaining to the testamentary trust. This lawsuit is referred to by the parties as the "global" litigation. The complaint contained no allegations accusing Gaughan of any wrongdoing, and Gaughan, who was both a co-administrator and co-executor of Helen's and Joseph's estates, requested that he not be named as a plaintiff in the global lawsuit.

The complaint in the global litigation included a claim against Western Surety Company on the bond it had provided Gaughan and Betts as administrators of Helen's estate. In turn, Western Surety filed a third-party complaint against Gaughan, individually, and a cross-claim against Betts's estate and the administrator of her estate. In this pleading, Western Surety asserted that Gaughan and Betts were personally liable to it for any sums it might be required to pay as a result of the litigation, based on an indemnity clause contained in the application for the bond. Gaughan hired an attorney and filed a separate answer to Western Surety's third-party complaint. The record

---

1. The other appeals are *Carmody v. Raymond James Fin. Servs., Inc.*, 373 Ark. 79, 281 S.W.3d 721 (2008) (affirming the probate court's order compelling arbitration of claims against a brokerage firm); *Carmody v. Betts*, 104 Ark.App. 84, 289 S.W.3d 174 (2008) (affirming the probate court's interpretation of Joseph's will). On May 12, 2010, we decided the matter of *Estate of Helen Virginia Coan v. Estate of Joseph Coan, Jr.*, 2010 Ark. App. 411, 2010 WL 1923946, holding that the statute of limitations did not bar Helen's estate from seeking to recover funds retained by Joseph's estate.

also reflects that Gaughan filed a motion in the global lawsuit seeking an interpretation of Joseph's will that was antithetical to the construction urged by Carmody and Savers in their complaint. The circuit court rejected Carmody and Savers's construction of the will, and we affirmed that decision in *Carmody v. Betts, supra.*

On April 27, 2007, Carmody and Savers filed a petition to have Gaughan removed as a co-administrator of Helen's estate. The petition cited various conflicts of interest on Gaughan's part. On June 19, 2007, Gaughan filed a motion seeking to withdraw as co-administrator of Helen's estate. In this petition, Gaughan averred that he was not consulted by Carmody and Savers before they filed the global lawsuit; that he believed that the litigation was without merit; and that he had not otherwise been consulted concerning the management of the estate. Gaughan also sought to be released from all liability that may be asserted against him in his capacity as a co-administrator of Helen's estate, and he requested the discharge of his bond and surety. Carmody and Savers did not object to Gaughan's resignation, but they resisted Gaughan's efforts to be relieved from liability for actions taken as a co-administrator.

Gaughan filed two accountings for the time he served as a co-administrator of Helen's estate. The first accounting included the period from Helen's death until the court removed Betts as an administrator. This accounting overlapped a period of time when Carmody and Savers were also co-administrators of the estate. The second accounting prepared by Gaughan covered the period from Betts's removal to the date that he filed his motion to with-

draw as a co-administrator. Carmody and Betts objected to the accountings, asserting that they were rife with errors.

On October 16, 2007, the circuit court entered an order approving Gaughan's resignation as a co-administrator of Helen's estate. The order provided that Gaughan's resignation was effective as of June 19, 2007, and that Gaughan had no further liability or responsibility with regard to the administration of the estate as of that date. The court reserved the other issues raised by Gaughan in his motion to resign, including the approval of the accountings.

On June 11, 2008, Gaughan filed a petition seeking attorney's fees.[2] The fees included charges for services rendered by his attorney in connection with the two accountings, his resignation, his defense of the Western Surety third-party complaint, and a brief that he filed in *Carmody v. Betts, supra.* The motion was accompanied by detailed time records from Gaughan's attorney, reflecting that counsel spent 153 hours working on these matters at a rate of $170 or $175 per hour.

Carmody and Savers opposed the award of fees to Gaughan. They first argued that the circuit court should deny the motion as a matter of law because Gaughan cited no authority for an award of fees. Also, Carmody and Savers relied on *Dunklin v. Ramsay*, 328 Ark. 263, 944 S.W.2d 76 (1997), to argue that Gaughan lacked standing as a minority co-administrator to seek reimbursement for attorney's fees. They also asserted that Arkansas Code Annotated section 28–48–108 (Supp.2009) provided no authority for an award of fees to Gaughan because he was a minority co-administrator whose attorney represented

2. In his motion for attorney's fees, Gaughan asserted that, by an order dated February 28, 2008, the circuit court approved both of his accountings and relieved him from liability to

Helen's estate arising out of his duties as a co-administrator. This order is not contained in the partial record submitted on appeal.

his personal interests that were of no benefit to Helen's estate.

After conducting a hearing, the circuit court issued a letter opinion deciding the fee motion. First, the circuit court found that Gaughan was entitled to fees for retaining counsel to perform his duties as an administrator, which included the preparation and defense of the accountings. The court also found that Carmody and Savers's opposition to the accountings resulted in protracted litigation. As authority for the fee award, the circuit court cited "A.C.A. § 28–56–104." Further, the court awarded attorney's fees incurred by Gaughan in defending the third-party complaint filed against him by Western Surety. In making this award, the circuit court reasoned that retaining counsel was necessary to defend his position as co-administrator with Betts and that the third-party complaint was the direct result of the litigation initiated by Carmody and Savers. In setting the amount of the fee, the circuit court found that the hourly rate charged by Gaughan's counsel was reasonable and that Gaughan had paid his attorney $28,404.25. However, the court examined counsel's billing records and disallowed $6,120 in fees, finding that certain charges represented services that were either not related to Gaughan's duties as co-administrator of Helen's estate or were related to matters concerning Joseph's estate. The court entered an order granting Gaughan's fee request in the amount of $22,284.25 on February 26, 2009. That same day, the circuit court filed a supplemental order awarding Gaughan an additional $2,857.50 in attorney's fees. This timely appeal followed.

An award of attorney's fees will not be set aside absent an abuse of discretion by the circuit court. *Calvert v. Estate of Calvert*, 99 Ark.App. 286, 259 S.W.3d 456 (2007). While the decision to award attorney's fees and the amount awarded are reviewed under an abuse-of-discretion standard, we review the factual findings made by the circuit court under a clearly erroneous standard of review. *Id.* On appellate review, however, we do not defer to a circuit court's conclusions of law. *Baldwin v. Eberle*, 2009 Ark. App. 222, 301 S.W.3d 475.

Carmody and Savers first take issue with the circuit court's citation to Arkansas Code Annotated section 28–56–104 as authority for the fee award. They point out that this statute is currently a "reserved" section of the code and argue that the circuit court's order fails to identify a proper statutory basis for the award. It is clear to us, however, that the circuit court meant to cite Arkansas Code Annotated section 28–48–108, which governs awards of attorney's fees for the employment of counsel by a personal representative, and that the court referenced section 28–56–104 by simple mistake. Because section 28–48–108 provides statutory authority for an award of fees to an administrator, we find no reversible error resulting from the circuit court's citation to the wrong statute. We will affirm a circuit court's decision if it reaches the right result, even though the court states an incorrect reason. *See Calvert, supra.*

Next, Carmody and Savers argue that section 28–48–108 does not authorize an award of fees for the services performed by Gaughan's attorney. Carmody and Savers contend that the accountings filed by Gaughan were not necessary because they, as the majority of co-administrators, also submitted accountings that Gaughan did not dispute as being inaccurate. They also assert that Gaughan is not entitled to fees incurred in the global lawsuit. In this regard, Carmody and Savers argue that an estate is not required to pay the attorney's fees of a

minority co-administrator engaged in litigation where the services performed do not benefit the estate and where the services are for the benefit of a co-administrator in defense of a personal, contractual obligation. Further, Carmody and Savers maintain that fees are not allowed where the minority co-administrator asserts positions that are in derogation of the interests of the estate and that are contrary to positions taken by the majority of co-administrators. In presenting these arguments, Carmody and Savers point out the testimony of Gaughan's attorney stating that he could attribute only $10,772.50 of his total fee request to services connected with the accountings, Gaughan's resignation, and related hearings.

Section 28–48–108 provides as follows:

(d)(1) The personal representative may employ legal counsel in connection with the probate of the will or the administration of the estate, and the attorney so employed shall prepare and present to the circuit court all necessary notices, petitions, orders, appraisals, bills of sale, deeds, leases, contracts, agreements, inventories, financial accounts, reports, and all other proper and necessary legal instruments during the entire six (6) months, or longer when necessary, while the estate is required by law to remain open.

Subsection (d)(2) of the statute sets out a fee schedule based on the total, reportable market value of the real and personal property, but subsection (d)(3) allows the circuit court to deviate from the schedule to allow a fee commensurate with the value of legal services rendered if the court determines that the scheduled fee is either excessive or insufficient under the circumstances of the case.

■ We do not hesitate to hold that the circuit court did not abuse its discretion in awarding attorney's fees to Gaughan for both preparing and successfully defending his accountings. Under Arkansas Code Annotated section 28–52–103 (Repl.2004), Gaughan had a duty to file annual accountings during the period of his administration and to file an accounting upon his resignation as co-administrator. Thus, Gaughan cannot be faulted for submitting an accounting to chronicle the estate's activities during the time that he and Betts were co-administrators and for submitting another one upon his resignation. Also, the circuit court overruled the objections to Gaughan's accountings. It is well settled that attorney's fees necessarily incurred in defense of an administrator's accounting can be paid from the estate but not fees paid to attorneys in resisting proper charges against the administrator, or one brought to compel him to perform his legal duty when he is at fault. *Souter v. Fly*, 182 Ark. 791, 33 S.W.2d 408 (1930); *Jacoway v. Hall*, 67 Ark. 340, 55 S.W. 12 (1900). The circuit court's award of fees in this regard rests on sound authority.

■ This brings us to the time Gaughan's counsel spent in defending against Western Surety's third-party complaint against Gaughan on the bond issued by it to Gaughan and Betts as the original co-administrators of Helen's estate. Carmody and Savers argue that the time spent on this claim was personal to Gaughan and did not benefit the estate. The value of services rendered to an estate is primarily a factual determination to be made by the probate court, and the appellate court will not reverse its decision where it is not clearly erroneous. *Nabers v. Estate of Setser*, 310 Ark. 194, 196, 833 S.W.2d 375, 376 (1992); *Adams v. West*, 293 Ark. 192, 195, 736 S.W.2d 4, 6 (1987). The circuit court found that Gaughan's defense of the action filed by Western Surety was necessarily taken in defense of his position as

co-administrator with Betts and a direct result of the litigation commenced by Carmody and Savers. We cannot say that this finding is clearly erroneous.

■ It has long been the rule in Arkansas that an action on the administrator's bond is not maintainable until the probate court has adjusted the accounts of the administrator and has ordered him to pay over amounts found to be in his hands. *Continental Ins. Cos. v. Estate of Rowan,* 250 Ark. 724, 466 S.W.2d 942 (1971); *Statham v. Brooke,* 140 Ark. 187, 215 S.W. 581 (1919); *Planters' Mutual Ins. Ass'n v. Harris,* 96 Ark. 222, 131 S.W. 949 (1910). This is because the surety's liability is derivative and ordinarily does not exceed that of the principal. *Estate of Rowan, supra.* Thus, Carmody and Savers's premature action against Western Surety resulted in Western Surety protecting its interest by filing the cross-claim and third-party claim against Betts and Gaughan. Moreover, an action on an administrator's bond is part of the administration of the estate pursuant to Ark.Code Ann. § 28–48–208. As such, Gaughan's attorney's fees are authorized by Ark.Code Ann. § 28–48–108(d)(1).

Affirmed.

VAUGHT, C.J., HART, ABRAMSON, and BAKER, JJ., agree.

ROBBINS, J. concurs in part and dissents in part.

HENRY and BROWN, JJ., concur in part and dissent in part.

JOHN R. ROBBINS, Judge, concurring in part; dissenting in part.

I agree with the rationale of the majority opinion that recognizes appellee Gaughan's entitlement to be reimbursed by the estate for his attorney fees. However, I am of the opinion that reimbursement for his attorney fees incurred in defending Western Surety's action against him under his administrator's bond was premature. The litigation between Western Surety and Gaughan has not yet played out. In that action, Gaughan has pled that he should be awarded from Western Surety his attorney fees incurred in defending Western Surety's claim. If successful on such request, Gaughan will not have need of reimbursement from the estate because the party directly responsible for his incurring these fees will have made reimbursement to Gaughan in whole or in part.

Consequently, I would reverse the award of attorney fees made by the trial court as to that portion applicable to Gaughan's defense of Western Surety's claim, but without prejudice to Gaughan's right to again seek reimbursement from the estate if he does not receive full reimbursement of these expenses from Western Surety.

COURTNEY HUDSON HENRY, Judge, concurring in part and dissenting in part.

Today, a majority of this court has upheld the circuit court's decision to award a personal administrator attorney's fees for the preparation and defense of his accountings, as well as the circuit court's ruling that the estate was also liable to the personal administrator for attorney's fees he incurred in opposition to litigation brought by the estate to recoup funds allegedly misappropriated from the estate. I am in complete agreement with the majority's opinion affirming that portion of the fee award attributable to the accountings. However, Arkansas law does not permit the award of fees for legal services rendered in connection with the separate lawsuit. Therefore, I must dissent.

In Arkansas, a circuit court may not award attorney's fees unless the fees are

authorized by statute. *In re Estate of Reimer,* 2010 Ark. App. 41, 2010 WL 132348. As applicable here, Arkansas Code Annotated section 28–48–108 (Supp. 2009) provides:

> (d)(1) The personal representative may employ legal counsel in connection with the probate of a will or the administration of the estate, and the attorney so employed shall prepare and present to the circuit court all necessary notices, petitions, orders, appraisals, bills of sale, deeds, leases, contracts, agreements, inventories, financial accounts, reports, and all other proper and necessary legal instruments during the entire six (6) months, or longer when necessary, while the estate is required by law to remain open.

Pursuant to this statute, the supreme court has long recognized that courts may authorize an administrator to employ counsel in the necessary protection of the estate in his or her hands ₁₂and may allow fees for such services rendered by the administrator to protect and preserve the estate. *Paget v. Brogan,* 67 Ark. 522, 55 S.W. 938 (1900). So, too, attorneys may be retained and paid reasonable sums for advising the administrator in the affairs relating to his office and for giving proper legal assistance in the conduct of the administration. *Miller v. Oil City Iron Works,* 184 Ark. 900, 45 S.W.2d 36 (1931). Here, however, the question is whether an award of fees to a co-administrator is authorized where the services are not associated with the administration or the protection of the estate.

Carmody and Savers place much reliance on the supreme court's decision in *Dunklin v. Ramsay,* 328 Ark. 263, 944 S.W.2d 76 (1997). In that case, the question before the court was whether a minority co-executor had the right to oppose the actions of the majority of executors in construing the decedent's will. The supreme court held that the minority coexecutor lacked standing to do so, holding that the provisions of Arkansas Code Annotated section 28–48–104 (1987) clearly mandated that, in situations where there are more than two executors of an estate, the powers given to them may only be exercised by the joint action of the majority, unless otherwise provided in the will. *Dunklin* did not involve the issue of attorney's fees, but the supreme court cited with approval the decision of *In re Greenberg's Estate,* 15 Ill.App.2d 414, 146 N.E.2d 404 (1957), where the Illinois Appellate Court held that a minority co-executor was free to seek independent legal counsel at his own expense in administering the affairs of the estate but not at the expense of the estate. While *Dunklin* supports Carmody and Savers' actions in prosecuting the global lawsuit in the manner they ₁₃see fit and over the objection of appellee, it does not directly touch upon the attorney's fee issue in question here.

More to the point is the decision of *In re Torian v. Smith,* 263 Ark. 304, 564 S.W.2d 521, *cert. denied,* 439 U.S. 883, 99 S.Ct. 223, 58 L.Ed.2d 195 (1978), where the supreme court approved the disallowance of fees for services that were performed on behalf of the executor in his individual capacity and whose actions were in derogation of the interests of the estate and its beneficiaries. Building upon this holding, in *Croft v. Clark,* 24 Ark.App. 16, 748 S.W.2d 149 (1988), we reversed an award of attorney's fees to an administrator who was sued both in his administrative and personal capacities. There, certain heirs of the decedent sued the administrator, who was also an heir, to set aside transfers made by the decedent to the administrator and other members of the administrator's family, claiming that the decedent was incompetent at the time the transactions were consummated. The heirs' lawsuit

was successful. Afterwards, the administrator petitioned the probate court for the attorney's fees that he incurred in defending the suit. The trial court allowed the fees, but we disagreed, reasoning that the administrator could not recover his attorney's fees from the estate because the estate stood to gain nothing, even if the administrator had prevailed in the lawsuit, and because the position taken by the administrator was in derogation of the interests of the estate as a whole.

The view our courts have taken in such matters is shared by those in other jurisdictions. In the case of *In re Estate of Maxcy*, 240 So.2d 93 (Dist.Ct.App.Fla. 1970), the court stated the general rule:

It is a clearly recognized principle in the administration of estates that counsel may be reimbursed from the estate only for the reasonable value of the necessary legal services he renders which benefits the estate, not the executor personally. And this principle is equally as applicable in the case of co-executors, assuming arguendo that separate counsel could represent each co-executor. Such separate counsel should not expect, and should not receive, fees for services that do not represent a distinct benefit to the estate. Such services, or a portion thereof, as inure to the benefit of the executor or co-executors primarily should not be compensable out of the estate funds.

*Id.* at 96. *See also In re Estate of Amator*, 117 Ariz. 579, 574 P.2d 67 (Ariz.Ct.App. 1978) (holding that attorney's fees are not allowed if incurred to protect the administrator's personal interests); *In re Oliver v. City of Larimore*, 540 N.W.2d 630 (N.D. 1995) (holding that attorney's fees are authorized only when counsel is retained for the benefit of the estate and are disallowed if the legal services are performed primarily for the personal interest of the administrator).

The common themes emanating from this body of law are that an administrator may not recover attorney's fees from the estate where the legal services rendered advance the personal interests of the administrator, where the estate derives no benefit from the services, or where the position asserted by the administrator is contrary to the interests of the estate. When these principles are applied to the instant case, I am persuaded that the trial court erred as a matter of law in awarding fees related to the global lawsuit. The third-party complaint asserted a claim against Gaughan in his individual capacity, based on his own contractual obligation. Thus, Gaughan's personal interest is at stake, not that of the estate. Gaughan's potential liability is to the surety; therefore, there will be no resulting benefit to the estate. Moreover, Gaughan is aligned in opposition to the estate, and he has specifically taken positions contrary to those asserted by the estate. For these reasons, I must conclude that the estate is not obliged to reimburse Gaughan for his attorney's fees.

Rather than apply the law, the majority is consumed by the notion that Gaughan should not have to pay his own attorney's fees because he was wrongfully haled into court when Carmody and Savers "prematurely" brought Western Surety into the global lawsuit. This "but for" logic runs counter to the settled law that an estate is not responsible for paying the fees of a personal administrator who is protecting his own interests, not the estate's, and who aims to defeat the lawsuit rightfully brought by a majority of the administrators of the estate. Quite simply, the law does not allow attorney's fees under these circumstances.

In addition, I am not convinced that joining Western Surety in the global lawsuit was necessarily improper. Arkansas

Code Annotated section 28–48–208 (Repl. 2004), which governs the enforcement of obligations on a bond, authorizes the filing of a separate lawsuit, apart from the administration of an estate, to recover damages sustained by reason of the default of a personal administrator, and the statute further provides that a surety is entitled to notice of actions affecting its liability on the bond. Carmody and Savers filed an independent action as permitted by the statute, and they have maintained that they named Western Surety in the global lawsuit in order to comply with the notice provision of the statute. In *Continental Ins. Cos. v. Estate of Rowan,* 252 Ark. 980, 482 S.W.2d 102 (1972), the surety received notice of the lawsuit brought against the former guardian for whom it had issued a bond, and the surety elected to participate in the litigation. In fact, the surety took the lead |₁₆role in defending the actions of the former guardian in order to avoid its own liability on the bond. In the same way, the liability of Western Surety, and in turn Gaughan, depends on whether Betts misallocated funds. If either Western Surety or Gaughan believed that joining Western Surety in the litigation was premature, they could have pursued the simple measure of moving to dismiss Western Surety from the lawsuit. Instead, like the surety in *Continental Ins. Cos., id.,* they have chosen to remain in the lawsuit as a means of protecting their own interests. As stated before, the law does not require the estate to pay the attorney's fees of Gaughan for advancing his own personal interests that are antithetical to the interests of the estate. I cannot fault Gaughan for protecting his interests, but he cannot do so at the expense of the estate.

BROWN, J., joins.