2012 Ark. App. 367

US FUEL INTERNATIONAL, INC.,
Troutman Oil Company, Inc., Toby R.
Troutman, and Jodie L. Troutman,
Appellants

v.

MURPHY OIL USA, INC., Appellee.

No. CA 11–1288.

Court of Appeals of Arkansas.

May 30, 2012.

R. David Lewis, Little Rock, for Appellant.

Seth Haines, Friday, Eldredge & Clark, LLP, Fayetteville, for Appellee.

JOSEPHINE LINKER HART, Judge.

This is a suit on a promissory note and guaranty. The Lonoke County Circuit Court granted summary judgment to appellee, Murphy Oil USA, and awarded Murphy $179,998.63, which included accrued interest, and attorney's fees of $37,857.12, jointly and severally against appellants, U.S. Fuel International, Inc.; Troutman Oil Co.; and Toby and Jodie Troutman.[1] On appeal, appellants contend that the circuit court erred (1) in not finding that the appellants were relieved as signers and guarantors of the note because of a novation; (2) in finding that the Troutmans' response to summary judgment did not extend the time for Troutman Oil to respond to summary judgment; (3) in finding that the guarantee of an "underlying agreement" obligated the guarantors to pay when the underlying agreement is not defined or shown by exhibits; and (4) in awarding attorney's fees because there was insufficient evidence to support such an award. Finding no error, we affirm.

US Fuel is a subsidiary of Troutman Oil. Toby Troutman was the president of both corporations. On November 9, 2005, Toby Troutman and Jodie Troutman executed a "Guaranty of Payment and Performance and Indemnity Agreement" (Guaranty Agreement) with Murphy whereby they personally guaranteed payment by U.S. Fuel "dba Troutman Oil Co., Inc." The Guaranty Agreement referred to the purchase of petroleum products or merchandise from Murphy by U.S. Fuel as the "underlying agreement." It also stated that it was an absolute and continuing guarantee that applied to all obligations owed by U.S. Fuel at the time that the Guaranty Agreement was executed, as well as future obligations created after that time. The Guaranty Agreement further provided that

no renewal, extensions or rearrangements or any other indulgence with respect to [US Fuel's] Obligations, ... no release of or substitution for any security or other guaranty now or hereafter held by Murphy for payment of [US Fuel's] Obligations, ... no release of [US Fuel] or of any other person primarily or secondarily liable on [US

---

1. Although U.S. Fuel is listed as an appellant, it appears that all the arguments are being made on behalf of Troutman Oil and the Troutmans. We sometimes refer to Troutman Oil, Toby Troutman, and Jodie Troutman collectively as the Troutman defendants.

Fuel's] Obligations, ... (including any maker, endorser, guarantor, or surety), no delay in enforcement of payment of [US Fuel's] Obligations, ... and no delay, omission or lack of diligence or care in exercising any right or power with respect to [US Fuel's] Obligations, or any security therefor, including impairment of collateral, or guaranty thereof or under this Guaranty, shall in any manner impair or affect the rights of Murphy or the duties and/or liabilities of [the Troutmans] hereunder.

The Troutmans waived any suretyship defenses they might have. The Guaranty Agreement also stated that

no amendment, modification, termination or waiver of any provision of this Guaranty, nor consent to any departure by [the Troutmans] therefrom, shall in any event be effective unless the same shall be in writing and signed by Murphy, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

The expiration date of the Guaranty Agreement was December 31, 2019, unless either party terminated the agreement prior to that date.

On January 28, 2009, Toby Troutman, as president of U.S. Fuel, executed a promissory note in favor of Murphy in the amount of $188,541.25. Monthly payments of $5000 were to begin on February 1, 2009, and continue through January 1, 2010. A balloon payment of $128,541.25 was due on February 1, 2010. If payments were made as scheduled, no interest would be due; otherwise, interest would be

charged from the date of the note and based on the Federal Reserve Discount Rate plus five percent. The note also provided for payment of attorney's fees.

On August 31, 2009, Murphy sued U.S. Fuel, Troutman Oil, and the Troutmans, alleging that U.S. Fuel had defaulted on the note and that the Troutmans' Guaranty Agreement applied to this obligation. Murphy sought payment of $162,541.25, costs, pre-and post-judgment interest, and attorney's fees.

The Troutman defendants answered, denying the material allegations of the complaint. They averred that U.S. Fuel was a Nevada corporation and that its charter had been revoked. They also asserted that Troutman Oil had never purchased goods from Murphy. The Troutman defendants also alleged that there was no underlying agreement, that the Guaranty Agreement did not apply because it did not mention a note, and that the note sued upon did not exist at the time of the execution of the Guaranty Agreement.

Murphy later amended its complaint against U.S. Fuel and the Troutman defendants. In addition to the original allegations, it also alleged that a second guaranty agreement had been executed in September 2006 whereby Troutman Oil guaranteed payment for purchases made by U.S. Fuel.[2] The Troutman defendants again answered, incorporating their earlier answers. They also denied the existence of the two guaranty agreements and the note.

Murphy filed a motion for summary judgment against all of the defendants. In addition to a supporting brief, Murphy also

---

**2.** The second guaranty agreement is actually referring to a "Certificate of Corporate Resolutions," which provides that the board of directors of Troutman Oil adopted a resolution on September 19, 2006, whereby Troutman Oil unconditionally guaranteed payment of all purchases made by U.S. Fuel, whether evidenced by open account, trade acceptance, note, or otherwise. The resolution also referred to U.S. Fuel as a subsidiary of Troutman Oil.

submitted an affidavit of Laura Brown, the general manager of Murphy's credit department. Brown set forth the Guaranty Agreement, the note, and the payments made on the note. She stated that balance due as of the date the complaint was filed, August 31, 2009, was $162,541.25. The balance had grown to $179,998.63 as of the filing of the motion for summary judgment.

The Troutmans, but not Troutman Oil, timely filed a response to the motion, asserting that the "underlying agreement" was not established and that the issue of liability on that agreement was an outstanding issue remaining for trial.[3] Several months later, on June 7, 2011, the Troutman defendants, including Troutman Oil, filed an amended response to the motion to assert that the note worked a novation so as to substitute for the prior obligations up to that point. They also asserted that the Troutmans' guaranty did not apply because the note was not in existence at the time of the guaranty. They further asserted that Troutman Oil was not liable for the note. The amended response was also captioned a cross-motion for summary judgment. Attached as an exhibit was the affidavit of Toby Troutman, who stated that Troutman Oil did not make any purchases from Murphy and did not sign the note.

The Troutman defendants also filed an answer to the amended complaint. The amended answer stated that the Troutman defendants "incorporate their prior answers as filed in this Court with the exception that [they] allege novation as [Murphy] pointed out in its June 21, 2011 brief that novation had not been pleaded." Murphy raised the issue of Troutman Oil's response not being timely because it did not originally respond to Murphy's motion for summary judgment.

At the hearing on the motion for summary judgment, the Troutman defendants argued that the 2009 note worked a novation as to the Troutmans' personal guaranty. The circuit court ruled from the bench, denying the claim that a novation occurred. The court granted summary judgment against U.S. Fuel and the Troutman defendants. In its written order, the circuit court found all the defendants jointly and severally liable to Murphy in the sum of $179,998.63, which included accrued interest. The court also awarded Murphy attorney's fees and costs of $37,857.12. The Troutman defendants timely filed their notice of appeal.

On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Harvest Rice, Inc. v. Fritz & Mertice Lehman Elevator & Dryer, Inc.*, 365 Ark. 573, 231 S.W.3d 720 (2006). We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.*

For their first point, the Troutman defendants argue that the execution of the note by U.S. Fuel worked a novation so that the Troutmans' personal guaranty was extinguished. The circuit court found that a novation had not been established.

**3.** Attached to Murphy's reply to the Troutmans' response is a letter from the Troutmans to Murphy. The letter states that both U.S. Fuel and Troutman Oil ceased doing business as of December 31, 2007. The letter also advised Murphy that the Troutmans were terminating their obligations under the Guaranty Agreement.

"Novation" is the substitution by mutual agreement of one debtor, or one creditor, for another, whereby the old debt is extinguished, or the substitution of a new debt or obligation for an existing one, which is thereby extinguished. *Barton v. Perryman*, 265 Ark. 228, 577 S.W.2d 596 (1979); *Harrison v. Benton State Bank*, 6 Ark.App. 355, 642 S.W.2d 331 (1982). The burden of establishing a novation is upon the party claiming it. *McIllwain v. Bank of Harrisburg*, 18 Ark.App. 213, 713 S.W.2d 469 (1986). For there to be a novation, it is necessary to show an intent on the part of the creditor to release an old debtor and substitute a new debtor. *Id.* There must be a clear and definite intention on the part of all concerned that such is the purpose of the agreement. *Id.*

The novation argument in this case fails. First, the Guaranty Agreement specifically provided that any modification must be in writing and signed by Murphy. The letter relied on by the Troutman defendants to support their argument expresses Murphy's intention that the Troutmans remain liable when it asks the Troutmans for their personal financial statements. Moreover, the Troutmans agreed that there would be no release or substitution of their guaranties, or release of U.S. Fuel's obligations except by payment. Such a provision does not discharge the guarantor and will be honored. *Morrilton Sec. Bank v. Kelemen*, 70 Ark. App. 246, 16 S.W.3d 567 (2000). The Guaranty Agreement broadly covered all obligations by U.S. Fuel at the time of the execution of the Guaranty Agreement or thereafter incurred.

In their second point, the Troutman defendants argue that the response to the motion for summary judgment filed by Toby and Jodie Troutman should inure to the benefit of Troutman Oil. We disagree.

In support of their argument, the Troutman defendants cite several cases dealing with the "common defense rule," whereby an answer asserting common defenses will inure to the benefit of other, non-answering defendants so as to prevent the entry of default judgments against them. *See, e.g., Liberty Life Ins. Co. v. Forsythe*, 25 Ark.App. 147, 752 S.W.2d 305 (1988). However, this is not a situation where the "common defense rule" applies because it is not the failure to timely respond to the motion for summary judgment that led the circuit court to grant the motion. Rather, summary judgment was granted because the circuit court concluded that it was clear that there were no genuine issues of material fact to be litigated and that Murphy was entitled to judgment as a matter of law. *Ashley v. Eisele*, 247 Ark. 281, 445 S.W.2d 76 (1969).

Unless the court reduces or enlarges the periods upon a showing of good cause, the party against whom a motion for summary judgment has been made must serve a response and any supporting materials within twenty-one days after service of the motion. Ark. R. Civ. P. 56(c)(1). Supplemental supporting materials may not be submitted after the time for serving a reply, unless the court orders otherwise. *Id.; see also Foscue v. McDaniel*, 2009 Ark. 223, 308 S.W.3d 122. If a response or reply is untimely, the court need not consider it. *Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 362 Ark. 598, 210 S.W.3d 101 (2005).

The Troutman defendants next argue for their third point that the circuit court erred in granting summary judgment to Murphy because the "underlying agreement" was never defined or established by the evidence. There is no merit to this argument because the "underlying agreement" was defined in the Guaranty Agreement in the following language:

for the further consideration that Murphy sell and deliver to: US Fuel International Inc. . . . (herein referred to as "Purchaser"), on such basis . . . as may, from time to time, be set by Murphy, petroleum products and/or merchandise in such quantities as said Purchaser may, from time to time, order from or contract for with Murphy (hereinafter sometimes referred to as the "Underlying Agreement") . . . .

Counsel for the Troutman defendants recognized as much in the hearing on the motion for summary judgment.

For the fourth and final point, the Troutman defendants argue that the circuit court erred in awarding Murphy its attorney's fees. Specifically, they argue that there was no evidence as to the factors our supreme court set forth in *Chrisco v. Sun Industries, Inc.,* 304 Ark. 227, 800 S.W.2d 717 (1990). We disagree.

An award of attorney's fees will not be set aside absent an abuse of discretion by the circuit court. *Estate of Coan v. Gaughan,* 2010 Ark. App. 616, 378 S.W.3d 201. While the decision to award attorney's fees and the amount awarded are reviewed under an abuse-of-discretion standard, we review factual findings made by the circuit court under a clearly erroneous standard of review. *Id.*

■ Murphy's attorney submitted an affidavit with its motion that averred that the attorney had been licensed to practice

for seven years and that the total fee requested was $35,637.50, together with costs of $2,219.62. After the Troutman defendants raised the issue of evidence to support the *Chrisco* factors, counsel for Murphy submitted a reply and a supplemental affidavit setting forth evidence to support those factors. Here, the Troutman defendants focus on whether there is evidence to support an analysis of the *Chrisco* factors rather than the reasonableness of the fees. It is only in their reply brief that they acknowledge the supplemental affidavit filed by counsel, and, then, only to argue that evidence is still lacking on some of the factors. Due to the circuit court's intimate acquaintance with the record and the quality of service rendered, we typically recognize the superior perspective of the circuit court in assessing the applicable factors. *Phi Kappa Tau Hous. Corp. v. Wengert,* 350 Ark. 335, 86 S.W.3d 856 (2002). Under these circumstances, we cannot say that the circuit court abused its discretion in its award of attorney's fees.

Affirmed.

PITTMAN and WYNNE, JJ., agree.